EDWARD ZUCKER, PLAINTIFF-RESPONDENT, v. KENWORTHY BROS., INC., DEFENDANT-APPELLANT.

Argued May 5, 1943—Decided August 5, 1943.

Before Justices CASE, DONGES and PORTER.

For the plaintiff-respondent, *Thomas J. Holleran.*

For the defendant-appellant, *Arthur M. Karl.*

The opinion of the court was delivered by

DONGES, J.  Defendant appeals from a judgment for plaintiff in the District Court of the Second Judicial District of the County of Essex, in a suit to recover the value of an automobile stored in defendant's premises.

The state of demand alleges:

"* * * plaintiff at the request of the defendant, stored for a consideration his automobile at the aforesaid place of storage, renting a garage at 336 Kearny Avenue in the Town of Kearny, County of Hudson, New Jersey.  That it was agreed by the defendant that said defendant maintain and keep harmless and safe the said automobile of the plaintiff and of the things contained therein.  Further, the defendant agreed with the plaintiff and it was his duty so *due.*

"4. The defendant in such a manner violated his said duty as aforesaid that the automobile of the plaintiff caught fire while stored in the place of storage or garage as aforesaid and was completely demolished together with several valuable things contained therein."

At the trial it was testified by plaintiff's daughter as follows:

"*Q.* Go ahead.  Tell us what the conversation between you —or the agreement between you and Mr. Kenworthy—for your father, with Mr. Kenworthy, was.  *A.* I asked about putting the car in the garage because I had no place to put it and didn't want to leave it in the street and not have it protected; and he said I could leave it there and he would have it protected.

"*Q.* Did he say anything about that?  Did he elaborate on that?  Did he say anything about fire and theft?  *A.* Yes.

"*Q.* What did he say?  *A.* I don't remember his exact words, but protection for fire and theft, and everything else.  After all, that's why you put a car in the garage, for protection."

The testimony left no room for doubt that defendant did not operate a public garage.  It was in the moving and haul-

ing business and stored its vehicles in this garage. It rendered no service of any kind to any vehicles stored there, except its own. It only rented space to plaintiff and other owners of automobiles. Each was furnished with a key to the building and they came and went as they chose, without any control by defendant over themselves or their vehicles.

It is not argued that this building was a public garage and subject to the law governing such structures.

It was argued in the court below, and the trial judge found that the relation of bailor and bailee existed and that the defendant was under the legal duty, upon proof of loss of the automobile, to show that it was not guilty of negligence resulting in the damage complained of. Upon the question of negligence the only proof was that a fire occurred, which damaged plaintiff's automobile. The cause was unknown. There was no proof as to its cause.

Under the proofs in this case, we conclude that the learned trial judge fell into error in finding from the evidence that the relation of bailor and bailee existed, there being no proof of any control in defendant.

In 6 *Am. Jur.* 154, it is said:

"It has been asserted to be a principle of bailments that both custody and service of some sort are involved in each bailment. Moreover, it is a generally recognized feature of bailments that possession of the thing bailed is severed from ownership; the bailor retains the general ownership, while the bailee has the lawful possession or custody for the specific purpose of the bailment. Most courts, especially with respect to a bailment for compensation, agree that the bailee's possession of the bailed property in such a case is more than a bare custody, and is such as would, for the purpose and during the period of bailment, give the bailee such control and dominion over it as would entitle him to exclude the possession of others, even that of the bailor."

In the same volume (at *p.* 59), it is said:

"In general it may be said that where personal property is left upon another's premises under circumstances from which either relation might possibly be predicated, the test is whether or not the person leaving the property has made such

a delivery as to amount to a relinquishment, for the duration of the relation, of his exclusive possession, control, and dominion over the property, so that the person upon whose premises it is left can exclude, within the limits of the agreement, the possession of all others. If he has, the general rule is that the transaction is a bailment. On the other hand, if there is no such delivery and relinquishment of exclusive possession, and his control and dominion over the goods is dependent in no degree upon the co-operation of the owner of the premises, and his access thereto is in no wise subject to the latter's control, it is generally held that he is a tenant or lessee of the space upon the premises where the goods are left."

We conclude that the relationship between the parties in this case was that of lessor and lessee, and not that of bailor and bailee. The state of demand appears to allege some sort of absolute agreement by defendant to protect the plaintiff's property from loss by fire or otherwise, but that is not the theory upon which the case was tried and determined below, or upon which the judgment is supported here. The theory was that of a bailment, and we are of the opinion that there was no evidence from which the existence of a bailment could legitimately be inferred by the trier of the facts. In the situation presented, there was no burden upon the defendant to show that it was free of negligence, in the absence of proof pointing to negligence on its part.

The judgment under review is reversed, with costs.