554

CAROTHERS et al. v. BOWLES,
Price Administrator.

No. 177.

United States Emergency Court of Appeals.

Heard at Houston Jan. 29, 1945.

Decided April 11, 1945.

Writ of Certiorari Denied June 11, 1945.
See 65 S.Ct. 1556.

Durell Carothers, of Houston, Tex.
(Walter F. Brown, of Houston, Tex., on
the brief), for complainants.

Jacob D. Hyman, Chief, Court Review
Price Branch, of Washington, D.C. (Rich-
ard H. Field, Gen.Counsel, Nathaniel. L.
Nathanson, Associate Gen.Counsel and
Louis L. Rochmes and T. Mildred Kush-
ner, Attys., all of the Office of Price Ad-
ministration, all of Washington, D.C., on
the brief), for respondent.

Before MARIS, Chief Judge, and
LINDLEY and LAWS, Judges.

MARIS, Chief Judge.

The complainants operate a number of
parking lots in Dallas, Texas. On Decem-
ber 12, 1943 the complainants instituted
their so-called "Park and Lock Space Rent-
al" plan at their parking lot situate 1014
Main Street, Dallas, Texas. By lines
marked upon the lot they subdivided it in-
to 50 spaces, each large enough to hold
one car. Each space is accessible to a
driveway running through the lot, being
arranged at an angle so that a car may
be easily driven from the driveway on to
the allotted space without backing or cut-
ting wheels. The customer drives the car
upon one of the spaces, parks and locks it
and retains the key. The car remains on
this space until reclaimed by the custom-
er. There is a part time cashier upon the
lot but no car attendant and no watchman.
The customer pays the cashier, or, in the

cashier's absence, deposits the correct amount in an envelope provided for the purpose and drops the envelope through an opening in the office door. The complainants protested Maximum Price Regulation No. 165 [1] which the Administrator had applied to their business. Their protest was denied and the present complaint followed.

The complainants contend that the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., does not authorize the Administrator to regulate, as he has done by MPR 165, the charges they make for the "park and lock" type of parking. Their contention is based upon the premise that they are engaged in the rental of real estate for business purposes and not the furnishing of a service. The Administrator, on the other hand, contends that the regulation as applied to the complainants' charges is authorized by the Act because the complainants are engaged in the business of furnishing services in connection with the storage of motor vehicles and are engaged in the operation of a service establishment.

Section 2(a) of the Act authorizes the Administrator to regulate the maximum prices of commodities. The Administrator relies for support of MPR 165 upon the definition of "commodity" contained in Section 302(c) [2] of the act, which is as follows: "The term 'commodity' means commodities, articles, products, and materials * * * and it also includes services rendered otherwise than as an employee in connection with the processing, distribution, storage, installation, repair, or negotiation of purchases or sales of a commodity, or in connection with the operation of any service establishment for the servicing of a commodity."

By thus enlarging the ordinary meaning of the term "commodity" to include services which relate to the creation, commercial distribution and continued use of commodities Congress has empowered the Administrator to control not only commodity prices but also the charges made for numerous services which relate to commodities. It will be observed that among the services thus included are services rendered in connection with the storage of a commodity. This, of course, includes the storage of automobiles since they are commodities within the meaning of the Act.

The services to which reference is made in the statutory definition are not personal services alone. They include also the services of providing equipment, machinery and tools with which to perform the particular operation and a place in which to carry it on. We think that all these are included in the concept of services as ordinarily understood in connection with the operations referred to in the definition. Accordingly within the meaning of the Act services rendered in connection with the storage of an automobile may include not only such personal service of attendants and others as may be furnished but also the service involved in providing a suitably arranged place for the storage of the automobile and the appropriate lighting and maintenance of the place so

---

[1] Maximum Price Regulation No. 165—Consumer Service, as amended August 13, 1942 (7 F.R. 6428) contains the following pertinent provisions:

"§ 1499.101 *Prohibition against dealing in services above maximum prices.* On and after July 1, 1942, regardless of any contract or other obligation:

\* \* \* \* \*

(c) *Services covered.* This Maximum Price Regulation No. 165 as amended shall apply to all rates and charges for the following services, except when such services are rendered as an employee:

\* \* \* \* \*

(4) Automotive vehicles (including but not limited to automobiles, busses, motorcycles, semi-trailers, tractors, trailers and trucks)—lubrication, maintenance, painting, rental, repair, storage (including but not limited to dead storage and parking), towing, washing or other servicing of (including but not limited to maintenance, rental or repair of accessories or parts such as batteries, radios, tires, or tubes except recapping and retreading of tires, but including though not limited to pickup and delivery and mounting and demounting of tires and use of loaned tires and tubes).

\* \* \* \* \*

§ 1499.116 *Definitions and explanations.* (a) When used in Maximum Price Regulation No. 165 as amended:

\* \* \* \* \*

(17) 'Service' shall include any and all of those services listed in § 1499.101 (c), and shall include any commodity or article sold in connection with the sale of a particular service."

[2] 50 U.S.C.A.Appendix § 942(c).

provided. All of these comprise storage service as it is commonly understood and paid for by the owners of automobiles who desire it.

■ The complainants contend that in their "park and lock" type of parking they do not provide automobile storage service. They urge that on the contrary they merely rent to their customers land upon which the latter park their cars and that the placing of their customers' cars upon the parking lot under the circumstances involved in their operation does not constitute storage of the customers' automobiles within the meaning of the Act. The complainants define "storage" as "the act of a bailor in placing the commodity in the hands of a bailee for safekeeping". From this definition they conclude that safekeeping and bailment are essential elements of storage. They assert that neither is present in their "park and lock" type of parking. The Administrator, on the other hand, defines "storage" as "the provision of an appropriate and convenient place for commodities when not in use". It will be seen that in his definition there is no requisite that there be a bailment.

Insofar as "safekeeping" is essential to storage it does not necessarily follow that a commodity is kept safe only if protection is afforded against the hazards of fire and theft. It well may be that protection against traffic hazards which are normally incident to street parking is also "safekeeping". Nor need the protection be that afforded by a watchman or attendant. In providing a space off the street and an accessible entrance and exit thereto the complainants make available that safety factor sought by those who patronize the "park and lock" type of parking lot.

We are not persuaded of the validity of the complainants' premise that there can be no storage without a bailment. It is true that in a number of cases in which cars have been lost or damaged while upon a parking lot courts have measured the degree of care owed by the parking lot operator to his customer by ascertaining the contractual relationship which existed. Where the facts disclosed that the possession of the automobile was transferred to the parking lot operator or his employee the court found that a bailment existed and consequently that the parking lot operator owed a high degree of care.[3] Where there was no transfer of possession there was no bailment.[4] In the absence of a bailment the relationship has been described as that of licensor and licensee.[5] None of these cases, however, holds that there is no "storage" if the possession of the car has not been transferred to the parking lot operator.

■ Our examination of the cases in which the courts have been called upon to construe what is meant by "storage" convinces us that the term has had such varied usage that its exact meaning must be sought in the context of the statute or contract where it is used.[6] The cases of Hood v. Judkins, 1886, 61 Mich. 575, 28 N.W. 689, Andrews v. City of Marion, 1943, 221 Ind. 422, 47 N.E.2d 968, and Southern Ry. Co. v. Stearns Bros., 4 Cir., 1928, 28 F.2d 560, are persuasive upon the point that a bailment is not in all cases essential to storage. We think that the word "storage" was used in the statutory definition in a sufficiently comprehensive sense to include the parking by members of the public of their automobiles upon a parking lot provided for that purpose. It follows that the "park and lock" type of operation which the complainants carry on at their parking lot in Dallas involves the storage of automobiles thereon. It remains to be determined, however, whether the complainants are supplying storage services there within the meaning of the Act so as to render their charges for those services subject to the Administrator's control.

■ It may be conceded that one who merely rents a piece of ground to the own-

3 Galowitz v. Magner, 1924, 208 App. Div. 6, 203 N.Y.S. 421; Baione v. Heavey, 1932, 103 Pa.Super. 529, 158 A. 181; Sandler v. Commonwealth Station Co., 1940, 307 Mass. 470, 30 N.E.2d 389, 131 A.L.R. 1170.

4 Ex parte Mobile Light & R. Co., 1924, 211 Ala. 525, 101 So. 177, 34 A.L.R. 921.

5 Porter v. Los Angeles Turf Club, 1940, 40 Cal.App.Supp.2d 840, 105 P.2d 956.

6 See for example: Hood v. Judkins, 1886, 61 Mich. 575, 28 N.W. 689; Andrews v. City of Marion, 1943, 221 Ind. 422, 47 N.E.2d 968; Zucker v. Kenworthy Bros., Inc., 1943, 130 N.J.L. 385, 33 A. 2d 349; Southern R. Co. v. Stearns Bros., 4 Cir., 1928, 28 F.2d 560; Monument Garage Corporation v. Levy, 1935, 266 N. Y. 339, 194 N.E. 848.

er of an automobile in order that the latter may store his car upon it, without more, is not engaged in rendering a storage service within the meaning of the Act, but is merely engaged in the renting of real estate. On the other hand one who operates a closed and heated garage for the storage of automobiles and who provides attendants to take charge of the cars stored therein is clearly engaged in supplying automobile storage service within the meaning of the Act. The usual types of outdoor parking lot operation fall somewhere between these two extremes. Whether such an operation involves the providing of storage service subject to the regulatory control of the Administrator depends upon whether there are present at least some of the incidents which customarily go to make up automobile storage service. Among these may be the grading, paving, lighting and cleaning of the parking lot and the marking upon it of suitable spaces for the parking of cars, as well as the supplying of an attendant.

A number of these incidents of storage service are unquestionably present in the complainants' operation. Thus they mark off their lot with suitable spaces for the parking of automobiles. They light it, clean it and keep it in suitable condition. They provide a common entrance for the use of all those who desire to store their cars upon the lot as well as a common means for exit. These, we think, are sufficient to stamp their operation as a storage service. The fact that they do not provide the personal services of an attendant or watchman does not transform their operation from a storage service into a mere real estate rental. Even though they do not provide an attendant or watchman they do supply enough other services in connection with the storage of automobiles to bring their operation within the purview of the Act.

It follows that the Administrator was authorized by the Act to regulate the charges which the complainants make for the parking of automobiles upon their lot and that the regulation as applied to them is valid. In the light of this conclusion it becomes unnecessary for us to determine whether the complainants operate a service establishment for the servicing of automobiles within the meaning of Section 302(c).

A judgment will be entered dismissing the complaint.