7 N.J. Super. 81 (1950)
72 A.2d 343
SAMUEL MARSH, JEROME MARSH AND IRVING MARSH, TRADING AS S. MARSH & SON, PLAINTIFFS-APPELLANTS,
v.
AMERICAN LOCKER COMPANY, INC., A CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 1950.
Decided March 22, 1950.
*82 Before Judges JACOBS, EASTWOOD and JAYNE.
Mr. Charles Handler argued the cause for the appellant (Mr. Martin Wm. Wallace, on the brief).
Mr. John E. Selser argued the cause for the respondent (Mr. John M. Mehler, attorney).
The opinion of the court was delivered by JACOBS, S.J.A.D.
This is an appeal from a judgment of dismissal entered in the Law Division at the close of the plaintiff's case.
Mr. Irving Marsh was the only witness. He testified that he is a member of S. Marsh & Son, a partnership engaged in the jewelry business at Newark, and had purchased costume jewelry in New York City invoiced at $2,743.70. The jewelry *83 was in a package which he carried to the Pennsylvania Railroad Station, intending to take a train to Newark. Upon learning that the next train would not leave for about forty-five minutes, he looked for a "place to put this package" while he had lunch. He saw a vacant locker in the large open space between the main waiting room and the outgoing trains, placed his package in the locker and, after inserting a dime and turning the key, tried the door to see that it was locked and removed the key. Having used the lockers on earlier occasions he was familiar with their operation and, although he denied that he had read the contents, he knew that the front of the lockers bore directions as to the amount to be inserted and other written material. He had lunch, returned to obtain his package, inserted his key and found that the package was gone. He went to the railroad baggage room and advised of his loss. He returned with an attendant to the locker, discovered nothing significant, and then examined the luggage in bins located in the baggage room. He was asked to wait and examine packages being removed by attendants from lockers after they had remained there for more than twenty-four hours; he did so but did not locate his package. He thereafter filed a formal claim and was offered the sum of $10 which was refused.
Thereafter the plaintiffs instituted their action alleging in the First Count that the defendant had breached its agreement to keep their goods safely and, in the Second Count, that the defendant was under a duty to keep their goods safely and had negligently failed to do so. At the close of the plaintiffs' testimony the lower Court granted the defendant's motion for dismissal. In support of their contention that this action was erroneous, the appellants rely mainly upon the contention that there was a common law bailment which was sufficient under the First Count to withstand the defendant's motion without any affirmative evidence of negligence (New Jersey Mfr's. Ass'n. Fire Insurance Co. v. Galowitz, 106 N.J.L. 493 (E. & A. 1930)); in addition, they urge that there was affirmative evidence of negligence under the Second Count.
*84 Although conflicting views have been expressed by the authorities as to whether common law bailments necessarily arise out of contract, they all recognize the need that there be possession of the property by the bailee. See 4 Williston, Contracts (Rev. Ed. 1936), pp. 2888, 2890; Brown, Personal Property (1936), pp. 225, 230. Determination as to where possession lies is ordinarily not difficult where exclusive physical control has been transferred to and assumed by the bailee. Cf. Lebkeucher v. Pennsylvania Railroad Co., 97 N.J.L. 112 (Sup. Ct. 1922); affirmed, Lebkuecker v. Pennsylvania R. Co., 98 N.J.L. 271 (E. & A. 1922); Restatement, Torts, § 216. However, it becomes troublesome as situations arise involving facts and considerations which depart from the traditional ones presented in the earlier cases. See Jones, The Parking Lot Cases, 27 Geo. L.J. 162, 178 (1938), where the author extensively reviewed the pertinent cases to support his thesis that the issue of whether the delivery of a car to a parking lot amounts to a bailment on the one hand or a license or privilege on the other will turn on the amount of control exercised by the parking lot operator. Cf. Malone v. Santora, 135 Conn. 286, 64 A.2d 51 (Sup. Ct. 1949); Carothers v. Bowles, 148 F.2d 554, 556 (Em. C.A. 1945); cert. denied, 325 U.S. 875 (1945). Similarly, when dealing with the safe deposit cases, Professor Williston stresses that although the depositor is given a key "the box is left in a place which is wholly within the possession and control of the other party and not accessible to the depositor without the former's consent." Williston, supra, p. 2923. See Lockwood v. Manhattan Storage & Warehouse Co., 28 App. Div. 68, 50 N.Y.S. 974 (App. Div. 1898).
In Gilson v. Pennsylvania Railroad Co., 86 N.J.L. 446 (Sup. Ct. 1914); affirmed, 87 N.J.L. 690 (E. & A. 1915), the plaintiff had hung his overcoat on a costumer in the defendant's restaurant while he was having lunch. When he looked for it after he had completed his lunch it was gone and he later instituted an action against the defendant to recover its value. The Court held that there was no bailment, pointing out that the plaintiff had not transferred "the exclusive *85 possession of the coat to the defendant" and that it had remained under his primary control. In Zucker v. Kenworthy Brothers, Inc., 130 N.J.L. 385 (Sup. Ct. 1943), the plaintiff, for a consideration, had stored his automobile in the garage of the defendant company which was engaged in the moving and hauling business. The plaintiff had been furnished with a key to the garage and he came as he chose. The Court, in holding that the relationship was that of landlord and tenant rather than bailment, quoted with approval the principles expressed in 6 Am. Jur. 154, 188, of which the following appears to be the most pertinent:
"On the other hand, if there is no such delivery and relinquishment of exclusive possession, and his control and dominion over the goods is dependent in no degree upon the co-operation of the owner of the premises, and his access thereto is in no wise subject to the latter's control, it is generally held that he is a tenant or lessee of the space upon the premises where the goods are left."
In Cornelius v. Berinstein, 183 N.Y. Misc. 685, 50 N.Y.S. 2d 186 (Sup. Ct. 1944), Justice Searl in nonsuiting the plaintiff expressly applied the foregoing to support his conclusion that there was no bailment where the evidence indicated that the missing property had been placed by the plaintiff in his locker at the defendant's bowling center. The plaintiff had a key to the locker and the defendant had a master key which fit all of the several hundred lockers in the premises. See also Kelemen v. American Locker Company, Inc., 182 N.Y. Misc. 1058, 47 N.Y.S.2d 411 (City Ct. 1944); Dyer v. American Locker Company, Inc., 72 N.Y.S.2d 451 (Sup. Ct. App. Term 1947), where recovery was denied in actions to recover the value of property taken from lockers operated by the defendant American Locker Company, Inc.
The appellants recognize that the common law bailment principles were established in situations dissimilar from those presented in the modern locker cases but urge that there is no justifiable reason for declining to apply them. In the typical common law bailment, possession of property in good condition was transferred from the bailor to some human *86 being representing the bailee. Upon failure to return the property in equally good condition, the bailor was generally entitled to maintain his action and to call upon the bailee to account for the property or its deterioration. This manner of approach was eminently fair since the bailee had the control of the property and presumably nothing would have happened to it if he had used due care. Cf. Seavey, Res Ipsa Loquitur: Tabula in Naufragio, 63 Harv. L. Rev. 643, 647 (1950). In addition, it may be noted that if the bailee had desired to limit the extent of his responsibility he had ample opportunity to do so by contractual arrangement at the time of the transfer of possession. Brown, supra, at p. 299.
The foregoing may be contrasted with the transaction before us. No human being acting on the defendant's behalf participated or received possession of the plaintiff's property. The defendant had no means of knowing whether a package had been placed in the locker, whether Mr. Marsh had properly locked it or whether he had removed a package which he had placed therein. Through his exclusive operation of the locker and possession of the key, Mr. Marsh, rather than the defendant, retained primary physical control of the package. Although the defendant also had access for the purpose of removing property remaining more than twenty-four hours, this was not intended to and did not in fact operate to withdraw the primary control afforded to Mr. Marsh during his proper occupancy of the locker. Cf. Broaddus v. Commercial National Bank, 113 Okla. 10, 237 Pac. 583 (Sup. Ct. 1925); Wells v. West, 212 N.C. 656, 194 S.E. 313 (Sup. Ct. 1937). The only means available to the defendant of entering into a specific contractual arrangement, by way of direction, limitation or otherwise, was by setting it forth on the face of the locker. This was done and, although Mr. Marsh knew it was there, no attempt was made to establish its provisions and he testified that he had not read it. Unlike a parcel room case where delivery is made to a human being (Lebkeucher v. Pennsylvania Railroad Co., supra), the defendant had no further opportunity of bringing home to the plaintiffs the matters expressed on the front of the locker.
*87 We have reached the conclusion that the plaintiffs did not establish a common law bailment sufficient to withstand the defendant's motion of dismissal without any affirmative showing of negligence or other proof of contractual relationship between the parties. It seems to us that a contrary view would afford greater protection to those who choose to avail themselves of the automatic facilities at nominal charge than they ought reasonably anticipate and would subject the legitimate business operations of the defendant to claims of unlimited amount without knowledge of the facts or substantial opportunity of denial.
The remaining question is whether there was sufficient evidence to support the plaintiffs' claim that, apart from bailment principles, the defendant had not discharged its obligation to exercise due care. There was no proof whatever that the locker and the lock furnished by the defendant were not of proper standard or in suitable working order. Mention is made of the fact that the lockers were unguarded. That was obvious to all, including Mr. Marsh, and he nonetheless chose to use the facility. The testimony that packages which had remained over twenty-four hours were being withdrawn and were examined by Mr. Marsh pursuant to the defendant's invitation was not accompanied by any significant evidence that this operation was conducted in negligent manner. The mere happening of the loss did not indicate fault on the defendant's part and we agree with the lower Court's finding that "there has been no negligence established."
The judgment of the Law Division is affirmed.