Theo I. Tapley, Respondent, *v.* Ross Theatre Corporation, Appellant.

Robert A. Tapley et al., as Administrators of the Estate of Helen E. Tapley, Deceased, Respondents, *v.* Ross Theatre Corporation, Appellant.

Robert A. Tapley, Respondent, *v.* Ross Theatre Corporation, Appellant.

Norman B. Tapley, an Infant, by Robert A. Tapley, His Guardian ad Litem, Respondent, *v.* Ross Theatre Corporation, Appellant.

Argued June 11, 1937; decided July 13, 1937.

*William Dike Reed* and *William B. Shelton* for appellant· The trial court erred in submitting to the jury as an issue of negligence the conduct of the employees after the fire was discovered in not using fire extinguishers to put out the flames. (*Ward* v. *F. R. A. Operating Corp.*, 265 N. Y. 303; *Woloszynowski* v. *N. Y. C. R. R. Co.*, 254 N. Y. 206; *Kawacz* v. *D., L. & W. R. R. Co.*, 259 N. Y. 166.) The trial court erred in submitting to the jury, as a second issue of negligence, the plaintiff's claim that the employees of the defendant's theatre neglected to supervise the exit of the patrons and sought to protect themselves, as to which there was no evidence. (*People* v. *Lazar*, 271 N. Y. 27; *Phillipson* v. *Ninno*, 233 N. Y. 223; *Ward* v. *F. R. A. Operating Corp.*, 265 N. Y. 303; *Owen* v. *Straight*, 239 App. Div. 622; 267 N. Y. 453; *Griswold* v. *Ringling*, 221 N. Y. 705; *Woloszynowski* v. *N. Y. C. R. R. Co.*, 254 N. Y. 206.) The jury were permitted to find negligence, without regard to the facts and circumstances, such as the short period of time in which to act, the impending danger and consequent excitement, the various acts required to clear the theatre of the audience in the emergency, and all other circumstances surrounding them. The submission of this issue to the jury was erroneous. (*Benoit* v. *Troy & L. R. R. Co.*, 154 N. Y. 223; *Lewis* v. *Long Island R. R. Co.*, 162 N. Y. 52; *Piehl* v. *Albany Ry.*, 19 App. Div. 471; *Stabenau* v. *Atlantic Avenue R. R. Co.*, 155 N. Y. 511.)

*John R. Bushong* for respondents. The evidence justified the finding of negligence against defendant. (*Griswold* v. *Ringling*, 165 App. Div. 737; 221 N. Y. 705; *Owen* v. *Straight*, 239 App. Div. 622; 242 App. Div. 892; 267 N. Y. 453.)

LOUGHRAN, J.   On December 31, 1933, fire swept the interior of a motion picture theatre maintained by the defendant at a corner of Park avenue and Elm avenue in the city of Mount Vernon.   Present as patrons were Mr. and Mrs. Robert A. Tapley and their infant children, Helen and Norman.   They were hurt by the flames, the injuries to Helen resulting in her death. For the consequent damages the defendant has been held to answer by judgments which are here for review.

It is to be premised that no claim was made of structural inadequacy of the defendant's property and that there was no proof of default in respect of the origin of the fire. The allegations of wrongdoing were " that there were fire extinguishers present that were not used " and " that the employees neglected to supervise the exit of the patrons."

The theatre was a one-story building having a seating capacity of 580.   There was no balcony.   The seats were divided into three sections by two aisles which separated the central floor space from that on either side. The main entrance was from Park avenue.   On the right as one entered were two emergency exits to Elm avenue, one nearer the lobby, the other nearer the opposite end of the building where on a small platform the screen was erected.   Suspended on a hook in the wall on either side of the platform was a copper cylinder holding two and a half gallons of fire-extinguishing liquid.   Silk curtains overhung the screen.   These could be parted and drawn together by a device installed in the projection booth which was affixed to the inside lobby wall.   In that booth also was a switch which controlled the interior lighting.

The Tapleys were seated at the middle of the house in the block of seats on the right side as they faced the screen on which a picture was being shown.   Smoke was observed on the platform and the manager appeared there with an usher.   " One of the men had a flashlight and opened this door of some kind under the platform and looked in

there with a flashlight and closed that and then took a curtain and pulled the curtain, this drape or whatever it was hanging there, back, and a little flame and smoke shot out from there, and they closed it back again and turned around — the flashlight went out — and one of the men started running up the aisle and the other man walked toward the right." No attempt was made to use a fire extinguisher. " The one man, as he ran up the aisle, he told us to keep our seats and everything would be all right." That man was the manager. He called to two employees in the projection booth to stop the show, to put the house lights on and to give him a hand. As the lights came on the silk curtains closed over the screen. " They were on fire, and it made a complete solid frame of flame, and that went directly up over the ceiling and over the back towards the lobby." Both emergency exits to Elm avenue were opened. The husband took the boy, the wife the girl. All were retarded by other patrons who carried down a partition in the stampede for safety. Officer John F. Bradley, of the Mount Vernon police, describes the scene. " They were jumping over seats and yelling and screaming and trying to make their way out. * * * I went to about the center of the theatre, as far down as I could get in. I thought by passing people down there it would calm them more. * * * I found a lady lying on the rear of the theatre * * * I assisted her to her feet and helped her out the door and helped other children through the aisles, in between the seats, to get them back." Mr. Bradley did not see the defendant's manager or any of its ushers inside the theatre.

When Mr. and Mrs. Tapley got into the street their children were found to have been left behind. Officer Bradley twice crawled back into the building and rolled out, first with one child, then with the other.

On these facts, the question is whether there was evidence of negligence. We have approached that question

mindful that our own opinion of the defendant's conduct is immaterial, and that, as the operation of motion picture theatres is an almost universal affair of everyday life, the case is peculiarly one in which we should be slow to deny all validity to the inferences that in fact have been drawn by the jury.

It is argued that there was no evidence that the flames could have been arrested by the means and within the time available. We find that evidence. It is all very well to say that this tragedy occurred in two and a half or three minutes. Use of a fire extinguisher would have been a matter of seconds. Two of these things were within easy reach when the curtain broke into flame. We think it might fairly have been found (apart from other factors to be noticed in a moment) that, since such an appliance was required to be provided, it was to be used on a burning curtain if it was ever to be used at all. (Cf. *Griswold* v. *Ringling*, 165 App. Div. 737; 221 N. Y. 705; 1 Beven on Negligence in Law [4th ed.], 626.)

It is argued that failure in that regard was at most a mere error of judgment in an immediate and over-mastering emergency. We think this issue was properly left to the jury. The emergency was but part of the defendant's situation. " One who collects a large number of people for gain or profit must be vigilant to protect them." (*Tantillo* v. *Goldstein Brothers Amusement Co.*, 248 N. Y. 286, 290.) The extinguishers that were at hand at the source of the blaze were means designed to meet this very exigency. Since the theatre was fully manned by employees (two of whom were at the spot of danger), those means could, perhaps, reasonably have been utilized without abandonment of the course that was pursued and without unduly increasing the peril. This being the case, a jury alone could solve the question whether in this aspect the defendant acted as the man of ordinary prudence would have acted in all the circumstances. (See Terry, Selected Essays on the Law of

Torts [negligence], pp. 261, 269, 270; 1 Street, the Foundations of Legal Liability, pp. 96, 97; American Law Institute, Restatement of the Law of Torts, § 296; 1 Beven on Negligence in Law [4th ed.], pp. 41, 42; 21 Halsbury's Laws of England [1st ed.], pp. 366, 367.)

It is argued that there was no evidence of failure properly to supervise the exodus of the audience to the street. We find that evidence in the testimony of Officer Bradley. The duty of the defendant in this aspect was not so far determinate as to admit of a declaration that (even if all other things were then equal) there was in this instance due care in law once the theatre was lighted and the ways of egress thrown open. At that point, too, the question was not merely what the defendant did or left undone, but whether the man of ordinary prudence would in the circumstances have more effectively managed the safe-conduct of the patrons.

It is also argued that there was error in the refusal of an unqualified instruction that the defendant was not responsible for the action of the terror-stricken audience. On this head we think it sufficient to point out that all the injuries in question were caused by burns. (Cf. *Ward* v. *F. R. A. Operating Corp.*, 265 N. Y. 303.)

In brief, we agree with the courts below that this was a case in which it was for the jury to ascertain what was negligence and whether it was proved.

In each action the judgment should be affirmed, with costs.

LEHMAN, FINCH and RIPPEY, JJ., concur; CRANE, Ch. J., and HUBBS, J., dissent; O'BRIEN, J., taking no part.

Judgments affirmed.