Charles L. THOMPSON and Dorothy Thompson, Appellants,

v.

SOUTHWESTERN BELL TELEPHONE CO., Respondent.

No. 53980.

Supreme Court of Missouri, Division No. 2.

Feb. 9, 1970.

Motion for Rehearing or to Transfer to Court En Banc Denied March 9, 1970.

Marshall & Littmann, Richard M. Marshall, Clayton, for appellants.

John Mohler, Edgar Mayfield, John D. Rahoy, St. Louis, for respondent, Southwestern Bell Telephone Co.; Wayne E. Babler, St. Louis, of counsel.

PRITCHARD, Commissioner.

The plaintiffs, Mr. and Mrs. Thompson, in their amended prayer for damages, sued defendant for a total of $78,756.93 for fire damage to their residence and its contents. The negligence charged against defendant is its failure to transmit Mrs. Thompson's telephoned notification of the fire to the fire department of the city of Frontenac. The verdict and judgment upon plaintiffs' claim were for defendant, and the basic issue presented is whether there was sufficient evidence to support the giving of the contributory negligence Instruction No. 5 that Mrs. Thompson negligently failed to use an available aerosol fire extinguisher to control the fire.

By answers to requests for admissions, defendant admitted that its telephone directory contained advice to telephone customers in emergencies: "In Extreme Emergency dial Operator, and say, 'I want to report a fire in (town name).' " It was further admitted that on December 5, 1964, the switchboard booklets in its Kirkwood office had the telephone number HEmpstead 2-1778 shown for the Frontenac Fire Department, whereas the actual telephone number of the Frontenac Fire Department at said time was HEmpstead 2-6666. Although the submissibility of plaintiffs' case is not questioned the further facts of the occurrence and those of the basic issue are these:

On the evening of December 5, 1964, Mrs. Thompson and one son, Curtis, were in their home at 1717 Butternut, Frontenac, Missouri. Mr. Thompson was in Chicago

attending a convention. Curtis was sitting in the den, some twelve feet from the kitchen, watching television. After 15 or 20 minutes Mrs. Thompson joined him and both watched for about 15 minutes more until a commercial (listed at 7:34 p. m.) came on television. Curtis then went into the kitchen and discovered a fire which was then about a foot or a foot and a half in height and width in the area of the stove. Curtis told Mrs. Thompson to throw salt on it, which she did, but the salt had no noticeable effect. Curtis ran to the bedroom and tried, through the operator, to call the Frontenac Fire Department. The operator twice reported back that there was no answer, but apparently the Kirkwood dispatcher was reached, and the fire department did arrive between 15 and 20 minutes later.

In addition to taking the top from a salt shaker and throwing salt on the fire, Mrs. Thompson filled a flower vase with water several times and threw it on the fire. The water "fizzled on the exhaust hood." Mrs. Thompson was asked on cross-examination: "Q. Did you have any fire extinguisher or anything of that nature in the kitchen? A. I had a small can, pressure can. Q. Of what— A. Of some product I had bought at a hardware store. Q. Some type of soda? A. I don't know what was in the can. Q. Did you buy the can? A. Yes. Q. What did you buy the can for? A. For fire protection in the kitchen. Q. It was in the kitchen? A. Yes, it was. Q. It was under the sink? A. That is right. Q. And you didn't use it? A. I didn't use it."

Captain Nicholas Bodner, Jr., of the Frontenac Fire Department, received a call on the Thompson fire at 8:00 p. m., and responded to it. He traveled the 2.7 miles to the residence in about seven minutes. He saw the glow in the sky as he approached and estimated a fire of that magnitude would be achieved in about 20 minutes. The best thing to do for a small grease fire on a stove to contain it is to use a dry powder extinguisher, and water should not be put on it. If the fire cannot be put out the best thing is to leave and call the fire department. Captain Bodner was familiar with some of the containers, spray cans, sold on the market and used for fighting fires in homes. They do not contain water and are used for "grease fires and that type of thing."

The former Fire Marshal of St. Louis County, James J. Helbig, was of the opinion that baking soda would be effective to put out a grease fire; if it was in a frying pan, the best thing to do would be to hold a lid over the top; if the fire is not contained in a pan and is a grease fire, the fire department should be called; and salt would be an effective ingredient to fight fire, but it would take a large amount to smother it.

As to the fire extinguisher can, Mr. Thompson's recollection was, "(T)he last time I had seen it before this fire it had been in a cabinet under the sink and it was one of these tiny aerosol type cans." He did not know what kind it was, it was a metal can sold to him for extinguishing fires. "Q. You bought it yourself to see that it was around the house to extinguish small fires, didn't you? A. I believe I did. Q. And, of course, the reason for it was that you felt that it would do the job for a small fire or otherwise you would not have bought it? A. At that time."

Given Instruction No. 5, of which plaintiffs complain, is:

"Your verdict must be for the defendant whether or not defendant was negligent if you believe:

First, plaintiff Mrs. Thompson failed to use the available aerosol fire extinguisher to control the fire, and

Second, plaintiff Mrs. Thompson's conduct submitted in paragraph First was negligent; and

Third, such negligence of plaintiff Mrs. Thompson directly caused or direct-

ly contributed to cause any damage plaintiffs may have sustained.

28.01
Not in MAI."

By their Point II plaintiffs contend that defendant, having the burden of proof on the issue of plaintiffs' contributory negligence, submitted Instruction No. 5 without supporting evidence that the aerosol can fire extinguisher was operative, was of the proper type to control the fire, or was large enough to control the fire; and that by using the word "available" Instruction No. 5 submits facts not in evidence. Meeting plaintiffs' contention, defendant says "that it could fairly have been found that since appellants purchased the extinguisher for small fires in the kitchen, it was to be used on this fire, if it was ever to be used at all. The fire extinguisher was as available to Mrs. Thompson as the salt, water and the vase." It is further argued by defendant that "Since appellants themselves purchased the fire extinguisher and had it in the kitchen under the sink at the time of the fire, the reasonable inference is that it would work, irrespective of its size or ingredients. Although Mr. Thompson didn't know what kind of extinguisher it was he bought it and wouldn't have purchased it if he didn't think it would do the job. The evidence clearly shows that the extinguisher was purchased for a particular use regardless of its contents and the fact that its contents were not shown is of no consequence because it was of no consequence to appellants when purchased or placed in the kitchen."

▮▮ The burden of proof on the pleaded issue of plaintiffs' contributory negligence of failure to control the fire is, as plaintiffs contend, upon defendant. Hardy v. St. Louis-San Francisco Railway Company, Mo., 406 S.W.2d 653, 658 [3–5]; Alexopoulos v. Simmons, Mo., 371 S.W.2d 229, 231 [2]; 35 Am.Jur.2d Fires, § 49, p. 628. It is only when the facts supporting the contributory negligence of a plaintiff appear in his testimony that a defendant is relieved of adducing evidence to prove the defense. Undoubtedly, the failure to put out a fire on his property by a plaintiff who has the means to do so is a defense to a charge of negligently setting a fire (35 Am.Jur.2d Fires, § 33, p. 613; 65A C.J.S. Negligence § 118(3), p. 45), or to a charge, as here, of failure timely to transmit a telephoned message of the existence of the fire to the fire department. Here, the defendant presented no evidence on the issue. Defendant depends upon the admissions of plaintiffs that they purchased the aerosol fire extinguisher for fire protection in the kitchen; it was located under the sink in the kitchen, and it was not used in an attempt by Mrs. Thompson to put out the fire. The question is, then, whether this evidence was sufficiently substantial to support an inference for the jury to determine that had Mrs. Thompson used the aerosol can it would have been effective to control the fire on the kitchen stove. The applicable rule is stated in 38 Am.Jur. Negligence, § 54, p. 701; "A negligent act cannot be said to be the proximate cause of an accident unless the accident could have been avoided in the absence thereof. By a parity of reasoning, the omission to perform a duty constitutes the proximate cause of an injury only where the doing of the omitted act would have prevented the injury." In this state the rule has been similarly stated, "[A]nd the test on causal connection is whether the facts show that absent the charged negligence the injury would not have been sustained (citing cases)." James v. Sunshine Biscuits, Inc., Mo., 402 S.W.2d 364, 375 [2–4]. Because of the lack of evidence in support of defendant's pleaded and submitted defense of contributory negligence that the contents of the aerosol can would have prevented the spread of this particular fire (there being also no evidence of what kind of fire this was) had it been used, Instruction No. 5 is in error in its submission that Mrs. Thompson was negligent in failing "to use the available aerosol fire extinguisher to control the fire." No legitimate inference can be drawn that because the Thompsons bought the

extinguisher for kitchen fire protection that its use would have controlled this particular fire. They did not know its contents, and they did not concede in their testimony that had it been used the fire damage would have been prevented. Neither Captain Bodner nor Mr. Helbig testified that the particular aerosol can which the Thompsons had purchased would have been effective to control the fire. Absent these essential items of evidence the jury's verdict could have been based upon speculation and conjecture upon which no legitimate inferences may be grounded. Probst v. Seyer, Mo., 353 S.W.2d 798, 802 [1–3], 91 A.L.R. 2d 1252.

Defendant cites Tapley et al. v. Ross Theatre Corporation, 275 N.Y. 144, 9 N.E. 2d 812. In that case silk curtains which were designed to be drawn over a movie screen got afire. There were two and one-half gallon copper fire extinguishers on hooks at either side of the screen apparently within easy reach of the manager and an usher who discovered the fire, then apparently consisting of a little flame and smoke. The men made no attempt to use a fire extinguisher. The court said, loc. cit. 9 N.E.2d 813 [2], "It is argued that there was no evidence that the flames could have been arrested by the means and within the time available. We find that evidence. It is all very well to say that this tragedy occurred in two and a half or three minutes. Use of a fire extinguisher would have been a matter of seconds. Two of these things were within easy reach when the curtain broke into flame. We think it might fairly have been found (apart from other factors to be noticed in a moment) that, *since such an appliance was required to be provided,* it was to be used on a burning curtain if it was ever to be used at all." (Emphasis added.) It is thus apparent that the inferences of negligence and causation were based upon substantial evidence in the Tap-

ley case: The fire occurred to a burning curtain of a type usually found in theatres; extinguishers were required to be provided, and thus it could legitimately be inferred that the contents of the available fire extinguishers were such as would control a fire occurring on those parts of the theatre premises. Here, there was no requirement that the Thompsons keep any certain type of extinguisher in their home designed to control any fires that might occur, giving rise to an inference that its use would have been effective.

Plaintiffs' first point is in part that the trial court erred in giving Instruction No. 2 in that it imputed Mrs. Thompson's alleged negligence to Mr. Thompson (joint owner of the damaged premises) without evidence of agency. Such will not be considered. There was no assignment of error in the motion for new trial as to this contention, and it is therefore not preserved for review. Civil Rules 79.03 and 83.13(a), V.A.M.R.; Ayres v. Keith, Mo., 355 S.W.2d 914, 917. Inasmuch as the case must be retried, the further contention in Point I, that Instruction No. 2 overemphasized Mrs. Thompson's alleged negligence, need not be ruled.

The judgment is reversed and the case is remanded for new trial.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

DONNELLY, P. J., FINCH, J., and SCHAAF, Special Judge, concur.

MORGAN, J., not sitting.