Bella Taieb et al., Appellants, v Hilton Hotels Corporation et al., Respondents.

First Department, November 17, 1987

258

## APPEARANCES OF COUNSEL

*Michael V. Kaplen* of counsel *(David Jaroslawicz,* attorney), for appellants.

*Anthony E. Satula, Jr. (Marvin V. Ausubel* and *Jessica R. Friedman* with him on the brief; *Fried, Frank, Harris, Shriver & Jacobson,* attorneys), for respondents.

## OPINION OF THE COURT

ROSENBERGER, J.

On the evening of August 13, 1979, appellants Bella and Maurice Taieb were in their corner room on the 38th floor of the New York Hilton Hotel when a minor fire broke out several stories below them. Hearing sirens, Mr. Taieb looked out the window and saw several fire engines stop and park around the hotel. Aware of the fact that several weeks before 48 persons had died in a hotel fire in Spain, Mr. Taieb urged his wife to hurry and finish dressing while he went down the hall to alert their children. The Taiebs at first went to the elevator but there was smoke inside it and they saw a sign directing guests to use the stairway in case of fire. Although no fire alarm was sounded, the Taiebs proceeded down the cement stairway where they were joined by more and more people as they descended. The group on the stairs was moving very fast and, on the 15th floor, Mr. Taieb told his wife to remove her shoes so that she could keep up with them. The

Taiebs did not encounter any hotel personnel in the stairwell on their descent to the lobby. By the time they were out on the street, Mrs. Taieb, who was taking medication for high blood pressure, was in pain and her left foot and leg began to swell. She was subsequently treated by a doctor in New York whom the hotel recommended and, upon her return to France, she allegedly underwent treatment for phlebitis.

Appellants instituted this action against respondent Hilton Hotels Corporation and the New York Hilton, Inc., seeking damages for the permanent injury allegedly suffered by Mrs. Taieb and for her husband's loss of services and support. The jurors unanimously found that respondents were negligent and that this negligence was the proximate cause of Mrs. Taieb's injuries. They awarded $150,000 to Mrs. Taieb and $20,000 to her husband. On appeal to Appellate Term, the jury verdict was reversed and the complaint dismissed (132 Misc 2d 892).

Appellate Term, in reversing the jury's verdict, concluded that the evidence was insufficient to support a finding of negligence. However, this conclusion rests on a misreading of the record and is clearly contradicted by the documents offered in evidence at trial. Appellate Term also determined, as a matter of law, that "the hotel's over-all response to the fire was reasonable" (132 Misc 2d, at 894, *supra)* despite testimony from appellants' expert witness to the contrary which raised a triable question of fact for the jury.

The Court of Appeals has spelled out the critical distinction between the factual determination by an appellate court that a jury verdict was against the weight of the evidence, in which case reversal results in a new trial, and the legal determination that the evidence was insufficient to support a verdict in favor of the plaintiff, in which case a final judgment dismissing the complaint is entered *(Randolph v City of New York,* 69 NY2d 844 [1987]; *Cohen v Hallmark Cards,* 45 NY2d 493, 498-499 [1978]). To conclude as a matter of law that the evidence is not sufficient to support the jury's verdict, essentially, the court must find that the evidence does not present a valid question of fact for the jury (45 NY2d, at 499, *supra).* In this case, we find that appellants presented sufficient evidence to raise triable questions of fact regarding respondents' negligence for the outbreak and spread of the fire and the actions of hotel employees to insure the safety of the guests after they learned of the fire.

While it is true that a hotelkeeper is not an insurer of the guests' personal safety, at common law the hotelkeeper has a duty to exercise reasonable care for the guests' safety (*Friedman v Shindler's Prairie House,* 224 App Div 232, 234 [3d Dept 1928], *affd* 250 NY 574 [1929]). "One who collects a large number of people for gain or profit must be vigilant to protect them" (*Tantillo v Goldstein Bros. Amusement Co.,* 248 NY 286, 290 [1928]; *Tapley v Ross Theatre Corp.,* 275 NY 144 [1937]). The duty to safeguard hotel guests from known danger persists even if the danger arose through no fault attributable to the hotelkeeper. In *Owens v Straight* (242 App Div 892, 893, *revd on other grounds* 267 NY 453, 455 [1935]), the Court of Appeals held that " 'irrespective of the origin of the fire, it was a question of fact whether the defendant had used reasonable care to safeguard his guests.' " We find that, in this case, the evidence was sufficient not only for the jury to find that the origin of the fire was attributable to respondents' negligence but also that appellant failed to take reasonable precautions to safeguard the guests from injury in their attempt to escape what they believed to be a life-threatening situation in a high-rise building.

Appellate Term found that the initial cause of the fire at respondent's hotel was unknown. The operations report filed by the New York City Fire Department personnel who responded to the alarm does not indicate a cause for the rubbish fire which originated in the lobby level utility room. However, the Bureau of Fire Investigation report prepared the following day lists the cause of the fire as "accidental/careless smoking". There was no evidence to contradict this official conclusion as to the cause of the blaze.

The fire investigation report also states that the fire spread from the trash chute to linen in the adjacent linen chute due to cracked chute insulation. The operations report indicates that the flames "ignited the dust and lint which had collected over the years" and a "light to medium smoke condition" resulted on most of the upper floors of the hotel due to the smoldering fires in the shaft from the fourth through eighth floors. This extension of the fire "via accumulations of lint and dust in [the] utility shaft" was confirmed by the Bureau of Fire Investigation.

Respondents called Julius Ferrara the building superintendent in charge of maintenance and engineering for the hotel. As assistant building superintendent in 1979, Mr. Ferrara

hired outside contractors to perform cleaning services in the hotel. It was his testimony that the laundry and linen chutes from the 44th floor to the lobby had been cleaned in April 1979, four months before the fire. Prior to that cleaning, they were last cleaned in October 1978. The hotel business records introduced by respondents, however, contradict this testimony. The hotel service record for 1974 through 1983, as well as the individual invoices from the Fire Proofing Corp. of America which did the cleaning, indicate that in April 1979 the linen shaft was cleaned from the fourth floor to the lobby only, for which the hotel was billed $259. According to these records, the linen and trash chutes from the 44th floor to the lobby were last cleaned in October 1978, 10 months before the fire. The hotel was charged $2,050 for this cleaning. Nevertheless, Appellate Term erroneously stated that "records produced by the hotel show that the linen chute from the 44th floor down to the lobby closet was cleaned about four months prior to the fire" (132 Misc 2d, at 894, *supra*).

It was established that the area in which the fire started and the route by which it spread were under the exclusive control of respondents' personnel. The hotel's security director testified that both the linen and trash chutes in the service areas from the lobby through the 44th floor were kept locked. As the trial court correctly instructed the jury, the mere fact that there was a fire at the hotel does not, of itself, establish negligence. However, the start or spread of a fire due to a failure to exercise reasonable care in operating or maintaining the hotel would be sufficient basis for such a finding. Thus, the evidence was legally sufficient to raise a valid question of fact and it was error for Appellate Term to dismiss the complaint *(Randolph v City of New York, supra; Cohen v Hallmark Cards, supra)*.

From the evidence presented at trial it was permissible for the jurors to infer, and rational for them to conclude, that careless acts by respondents' personnel and deficiencies in the respondents' maintenance "permitted a fire to break out", as appellants alleged in the complaint. That conclusion finds further support in the firefighters' report that the parts of the chutes which had been recently cleaned did not catch fire while the chute from the fourth through the eighth floors, which had not been cleaned for 10 months, did. As a factual matter, therefore, it cannot be said that the jury's verdict was against the weight of the evidence. Respondents did not challenge the Fire Department's theory as to the cause of the fire

and respondents' claim that the chutes had been recently cleaned was contradicted by their own records.

A party's liability for negligent acts or omissions extends to all injuries which are a foreseeable consequence thereof provided that the negligent conduct was the proximate, or legal cause of the injuries sustained. "Given the unique nature of the inquiry in each case, it is for the finder of fact to determine legal cause, once the court has been satisfied that a prima facie case has been established" *(Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315 [1980]). It is entirely foreseeable that persons in a burning building may be injured either by fire, smoke, or in the attempt to escape the building. Respondents, however, presented evidence to show that appellants were not endangered by the fire and there was no need for them to take flight. The firefighters who responded to the scene quickly contained the blaze and determined that there was no danger to the guests. The Fire Department did not issue an evacuation order and no alarm was sounded. The hotel's assistant manager testified that he and other hotel personnel then went from floor to floor knocking at doors to tell the guests that things were under control and not to be alarmed by the smoke. However, he did not recall if he or any other hotel employee went to appellants' floor and appellants testified that they saw no one from the hotel staff either on their floor or in the stairwell. Indeed, the assistant manager acknowledged that no hotel employees were stationed in the stairwells which hotel guests were instructed to use in case of fire. According to appellants, this was also a breach of respondents' duty of care.

Appellants' expert witness, George Friedel, a former Chief of the New York City Fire Department, stated that, in his opinion, it was "totally incorrect" for the hotel not to station employees in the stairwell to assist guests in the event of a fire. The hotel's fire emergency plan which was introduced by respondents reveals that no employees are assigned to the stairwells to insure orderly evacuation during a fire, although the maids on each floor are assigned to stations at the fire stairway doors and security personnel are posted at the fire exit doors. Appellants' expert maintained that because the Hilton "is about a block square, there would be areas in this particular case that would be free from smoke and fire", and it was therefore unnecessary for guests to go down 38 floors to escape from the building. In his opinion, someone from the hotel should have been in the stairwell "to give them guid-

ance and direction, whether or not to stop, don't go any further, it's not necessary".

This expert testimony raised a question of fact as to the reasonableness of respondents' conduct after hotel employees learned of the fire and smoke conditions in the hotel. "That there was evidence to the contrary does not justify dismissing the complaint on the ground that the jury's verdict was not based on legally sufficient evidence" *(Randolph v City of New York,* 69 NY2d, at 847, *supra).* It was, indisputably, for the jury to decide how much weight to give the testimony from appellants' expert in relation to other evidence presented. *(Commercial Cas. Ins. Co. v Roman,* 269 NY 451, 456-457 [1936]; *Topel v Long Is. Jewish Med. Center,* 76 AD2d 862 [2d Dept 1980], *affd* 55 NY2d 682 [1981].) While the determination that a verdict is against the weight of the evidence "is in large part a discretionary balancing of many factors" *(Cohen v Hallmark Cards,* 45 NY2d, at 499, *supra),* we cannot agree with Appellate Term's discretionary exercise in fact finding here.

An international hotel opens its doors to guests of all ages and in all states of health, some of whom might have trouble walking down 38 flights of steps under the best of circumstances. Given that the hotel instructed guests to use the stairs in case of fire, and the ever present danger of panic in such a situation, the jury was warranted in finding that a reasonably prudent person would have foreseen the risk of injury under the circumstances and taken the precaution of having hotel employees in the stairwell to direct and give guidance to the guests.

Appellate Term, having rejected the jury's verdict on liability, did not reach the issue of damages other than to note that the damage award was clearly excessive given the quality of medical proof in this case. On this issue, we find that the jury's award was against the weight of the evidence. Appellants did not offer testimony from any of the doctors who allegedly treated Mrs. Taieb upon her return to France, nor were translations of her French medical records provided. The doctor who treated Mrs. Taieb a few days after the incident had no independent recollection of his treatment of her and, from his records, he could not state with a reasonable degree of medical certainty that she had phlebitis.

Appellants' other medical expert, Dr. Alan Jaffee, had neither treated nor examined Mrs. Taieb. Based on counsel's

hypothetical questions, he offered the opinion that she had suffered some type of trauma to her leg in running down the stairs, although he could not specify the nature of the trauma. This trauma could have led to the development of a blood clot which permanently damaged a vein, giving rise to recurring attacks of phlebitis. Respondents' medical expert, Dr. Richard Warner, examined Mrs. Taieb in December 1981 and also reviewed the records of her treatment after the incident. He noted that when she was treated after the incident the physician did not find symptoms indicating phlebitis, nor did Dr. Warner find any in 1981. He concluded that the pain Mrs. Taieb suffered was due to muscle inflammation or a severe "charley horse", but that she did not suffer from phlebitis.

Appellants' expert medical testimony, which was tenuous and speculative, was not sufficient, in our view, to support the substantial award in appellants' favor. We therefore remand for a new trial on the issue of damages.

Accordingly, the order of the Appellate Term of the Supreme Court, First Department, entered July 18, 1986, which reversed a judgment of New York County Civil Court (John E. H. Stackhouse, J.), entered April 4, 1985, upon a jury verdict in favor of plaintiffs-appellants, and which dismissed the complaint, should be reversed, on the law and the facts, the complaint and jury verdict on liability reinstated and the matter remanded for trial on the issue of damages, without costs.

Murphy, P. J., Kupferman, Carro and Milonas, JJ., concur.

Order, Appellate Term of the Supreme Court, First Department, entered on July 18, 1986, unanimously reversed, on the law and the facts, the complaint and jury verdict on liability reinstated and the matter remanded for trial on the issue of damages, without costs and without disbursements.