**Ex parte MOBILE LIGHT & R. CO.**

**THOMPSON v. MOBILE LIGHT & R. CO.**

**(I Div. 322.)**

(Supreme Court of Alabama. June 26, 1924.)

**1. Bailment �köl—Owner of "parking place" not bailee of automobiles parked.**

Where the owner of a "parking place," which in common understanding implies a place where cars may be left parked or standing and removed by the owner at pleasure, kept a gate-keeper to collect a fee for parking who remained there a portion of the time and a guard to watch after automobiles generally, there was no bailment of an automobile parked.

**2. Pleading ⊛34(4)—On demurrer, pleading is construed most strongly against pleader.**

On demurrer an averment in a pleading is construed most strongly against the pleader.

**3. Bailment ⊛l—Essential element is possession in bailee.**

The essential element of bailment is possession in the bailee, and his duties of reasonable care spring out of his possession.

**4. Bailment ⊛l—Contract of bailment may be implied.**

Contract of bailment may be implied from words and acts of the parties, but can only arise where the natural and just interpretation of the acts of the parties warrant such a conclusion.

**5. Bailment ⊛14(1)—Agreement of owner of parking place held not to imply contract to guard against theft.**

Where the owner of a parking place for automobiles kept an employé at the gate to collect fees, who remained only part of the time, and another employé to maintain general watch over automobiles parked, for which check was issued stating that the right sold was a privilege of parking and that no responsibility for lost or stolen property was assumed, there was no implied contract on the part of the owner of the parking place to guard against theft.

**6. Contracts ⊛114—Party to contract carrying a legal duty cannot stipulate for protection against negligence in performance.**

Where parties by a contract enter into a relation carrying a legal duty, they cannot stipulate for protection against negligence in performance.

Petition for Certiorari to Court of Appeals.

Petition of the Mobile Light & Railroad Company for certiorari to the Court of Appeals to review and revise the judgment and decision there rendered in the case styled Thompson v. Mobile Light & Railroad Co. (Ala. App.) 101 South. 175. Writ granted.

Harry T. Smith & Caffey, of Mobile, for petitioner.

There can be no bailment, unless the bailee acquires an independent and temporarily exclusive possession. Van Wagoner v. Buckley, 148 App. Div. 808, 133 N. Y. Supp. 599; Bertig Bros. v. Norman, 101 Ark. 75, 141 S. W. 201, Ann. Cas. 1913D, 943; A. C. L. v. Baker, 118 Ga. 809, 45 S. E. 673; Gilson v. P. R. R., 86 N. J. Law, 446, 92 Atl. 59. It is only on contract express or implied for the payment of money that suit can be brought in the name of the real party in interest in this state. Code 1907, § 2489. In other cases it must be brought in the name of the party

⊛For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

making the contract. Auerbach v. Pritchett, 58 Ala. 451; Newsom v. Huey, 36 Ala. 37; Southern Ry. Co. v. Brewster, 9 Ala. App. 597, 63 South. 790.

Alex T. Howard, of Mobile, opposed.

No brief reached the Reporter.

BOULDIN, J. The complaint is as follows:

"The plaintiff claims of the defendant the sum of four hundred dollars as damages for that on to wit the 15th day of July, 1922, the plaintiff was the owner of a Ford automobile of the value of to wit four hundred dollars and the defendant was the owner of a large park on Mobile Bay, much frequented by the public, in connection with which a baseball association operated a baseball diamond and stand, also much frequented by the public and by people driving automobiles and near which baseball stand defendant had leased a parking place for automobiles, which was also much used by the public so that many automobiles usually parked there whilst the owners thereof were patronizing the said baseball diamond and stand to see the games played there; defendant regularly kept in attendance an employé at said park, whose duty it was to generally watch after said automobiles so parked and said attendant was regularly seen by the public in and about said automobiles and about said parking place keeping a general lookout for the same; and there was also stationed at the entrance to said place another employé of the defendant who collected fifteen cents for each automobile so parked at said place and this gatekeeper remained on duty a portion of the time whilst said ball games were being played, and one or the other of said employés was on duty regularly throughout the period whilst said ball games were being played and the plaintiff as well as the public in general were induced to believe and from the facts hereinabove set forth had a reasonable right so to believe that the keeping on duty of aforesaid employés or one of them was a part and parcel of the service rendered by defendant in connection with said parking space and the plaintiff alleges that the defendant thereby impliedly agreed with those so using said space that for the consideration of fifteen cents said automobiles would be to that extent protected by the keeping on hand of either or both of said attendants and that their presence there would be a part and parcel of the service rendered by defendant in return for said charge; that on said day the plaintiff's son Paul E. Thompson, Jr., who was then and there using said car with his father's permission paid the sum of fifteen cents and parked his said car in said space and the defendant's gate-keeper handed to plaintiff's said son a check which read as follows: 'No. 16767. A charge of fifteen cents is made for the privilege of parking one automobile in the Monroe Park parking space. The company assumes no responsibility for lost or stolen property or damage to property while parking in said parking space. Mobile Light & Railroad Co.' Plaintiff further alleges that whilst his said son was watching the baseball game then being played at said park a thief came to said park and stole his said car and the loss to plaintiff of said automobile was proximately caused by and through the negligence of the defendant in this that it negligently failed to guard or protect plaintiff's said automobile and he shows that whilst his said son was so watching said game neither of said attendants was present at said place or near the same and as a result thereof said cars had no protection whatsoever from theft and that because of the absence of said attendants and the fact that said defendant had no one at all present at said parking place plaintiff was so caused to suffer said loss of his car, to his damage as aforesaid; wherefore he sues."

The question presented is whether this complaint states a good cause of action as against apt demurrer.

The complaint states clearly the facts upon which liability is claimed. The test is: Would these facts, if proven, support a finding that defendant owed a duty to plaintiff to keep a general watch over the parked cars to prevent theft? Admittedly, if there was no duty in that regard, there was no negligence by nonperformance. No question arises as to legal duty growing out of a public service, such as public warehousemen and the like. The liability must rest either upon a direct contract, express or implied, or upon a duty growing out of the relations created by such contract.

[1, 2] The first inquiry suggested by these facts is whether there was a bailment. It is shown that defendant maintained a "parking place" where patrons of the nearby baseball park could park their cars. Within itself a parking place in common understanding implies a place where cars may be driven by the owner, left parked or standing, and removed by the owner at pleasure. A fee charged for a parking privilege in the place may be regarded as carrying the right to parking space with rights of ingress and egress. We find nothing in the complaint indicating that possession and control, actual or constructive, was surrendered to or assumed by the defendant. The complaint defines the duty of the gatekeeper to be at the entrance to collect the fee or charge for parking. He is alleged to have remained there a portion of the time—the time for collecting entrance fees—but not so far as appears when the cars were removed. He had a duty to see that a car go in only on payment of the charge, but no duty to see when or by whom the car was taken out. There was another employé "whose duty it was to generally watch after said automobile so parked." This duty is consistent with either a bailment or a general oversight of the car while parked on the space leased by the owner and still under his control. The averment must be construed most strongly against the pleader.

[3] An essential element of bailment is possession in the bailee. His duties of reasonable care spring out of his possession.

Watson v. State, 70 Ala. 13, 45 Am. Rep. 70; Prince v. Ala. State Fair, 106 Ala. 340, 17 South. 449, 28 L. R. A. 716; 6 C. J. 1084.

[4] A contract of bailment, like other contracts, may be implied from the words and acts of the parties, evincing a purpose to enter into that relation toward the property. Such implied contract can only arise where the natural and just interpretation of the acts of the parties warrants such conclusion. The complaint shows this parking space was for a special and temporary use of customers; that large numbers of cars came for the same purpose, and naturally about the same time; that all would want to leave about the same time. A surrender of possession of each car to the defendant, to be redelivered to the rightful owner when the ball game was over, would clearly call for a force of employés, or a resort to a system of multiple checks to identify the car and the driver when taken from the parking grounds. This, it may easily appear, would cause delays and annoyances which would defeat the very convenience offered to the public and add greatly to the expense.

We conclude the complaint does not show a bailment, with the legal duty to exercise reasonable care against theft as incident to that relation.

[5] The greater stress is laid upon the idea that the complaint shows an implied contract growing out of an apparent status under which the public was invited to park cars in defendant's parking place; that the "general watch" or general "lookout" manifested by having an employé on the ground a portion of the time—all the time when the gatekeeper was not on duty—raises an implied contract to maintain that status as a part of the service for the protection of cars against theft. In dealing with this question, the check issued to and accepted by the owner on entering the grounds with his car must be looked to as a part of the transaction.

The plaintiff's view is strongly stated in the opinion of the Court of Appeals as follows:

" * * * Defendant by its acts says to the public generally: 'I have a space set apart for the parking of cars, I have two men in charge, one will collect the fees charged and one will generally watch after "the cars parked in this space," but if in spite of this, there is loss, theft or damage I will not be responsible. For this service I will charge fifteen cents.' "

Passing by the averment that one or the other of the employés was on duty throughout the period cars were parked on the grounds of defendant, the vital question is whether the facts averred support such implied contract. The check issued to plaintiff may be considered in the nature of a receipt, although it does not acknowledge receipt of the 15 cents. On its face, it is more than a mere receipt. It expressly defines the service or right sold for 15 cents, viz. "the privilege of parking one automobile in the Monroe Park parking space." It also embodies an express notice that "the company assumes no responsibility for lost or stolen property," etc. If, without this check, the status shown could be construed into an implied holding out that the defendant would keep a general lookout against theft, such implied agreement cannot be inferred in the face of such express notice in the hands of the plaintiff at the time he entered the parking ground. This check has an element of contract defining the subject-matter of the transaction and the duties of the respective parties.

[6] It is a well-known and just rule that where parties by contract enter into a relation carrying a legal duty, while one may limit the scope of his duties, he cannot stipulate for protection against negligence in the performance of the duties he does assume. Thus, in case of a warehouseman, there is such contractual relation that, while not responsible for theft as a rule, he may become responsible for theft resulting from negligence—want of reasonable care in keeping the property intrusted to him. Moore v. City of Mobile, 1 Stew. 284.

As we read this complaint, there is shown no contract carrying a duty to keep a general lookout for thieves. The general watch over parked cars may be referred to the duty to make available the right of parking space with ingress and egress—the privilege for which the owner paid his entrance fee. To write into the transaction a duty to look out for theft is to add to the special limited service the parties had in mind, and to impose a liability properly covered by the field of insurance. It would defeat the purpose to furnish a mere parking convenience for a nominal charge.

The writ of certiorari will be granted and the cause remanded to the Court of Appeals for further proceedings in conformity with this opinion.

All the Justices concur.