12 So.2d 543

**LEWIS v. EBERSOLE.**

**6 Div. 117.**

Supreme Court of Alabama.

March 25, 1943.

202

Lawrence Dumas, Jr., of Birmingham, for appellant.

McGowen & McGowen, of Birmingham, for appellee.

FOSTER, Justice.

This suit involves the liability of a parking lot proprietor for the theft of a car parked on it. It was a large unenclosed lot close to the business center of Birmingham. The suit was tried by the court without a jury and judgment was rendered for plaintiff for the amount of the undisputed value of the car which was never recovered.

The only counts on which judgment can be rendered for plaintiff on the evidence are counts IV and V. There was no proof of a conversion. Davis v. Hurt, 114 Ala. 146, 21 So. 468. They allege that defendant was a bailee of the car, to whom was delivered the possession, custody and control of it. This must be proven therefore. If the relation of defendant was that of a licensor merely, it would not sustain the claim in either of those counts.

Their conduct and course of dealing may be such that on some occasions when the car was parked, the custody and control was not delivered to defendant, and on others that this in fact occurred.

The evidence in some of its tendencies was conflicting, and was given orally in open court. It will therefore be reviewed as to the findings and inferences drawn from it by the court as though it had been tried by a jury and motion had been made to set aside the verdict as being contrary to the evidence, and was overruled. Thornhill v. Gulf Coast Produce Exchange, 219 Ala. 251, 121 So. 912: see, section 260, Title 7, Code of 1940.

The legal principles affecting liability in this sort of case depend upon the relationship between plaintiff and defendant together with any expressed obligations or those properly to be inferred from the circumstances.

The relationship is either that of (1) a bailment, (2) a license or (3) a lease. The duties imposed by law differ somewhat dependent upon the true legal relation. Those duties may be changed by contract.

It is our province therefore first to determine the nature of their relation, and then see if the duties incident to that relation have been altered by contract.

In order to constitute a bailment the bailee must have voluntarily assumed

204

the custody and possession of the property for another. Ridgely Operating Co. v. White, 227 Ala. 459, 150 So. 693. If this is not done, the relation here material was either that of a license or a lease. If there was only permission given, though for a reward, to park at any convenient place on the lot, without any assumption of dominion over the property or custody of it in any respect, it was a license. If a designated place on the lot was assigned to the car owner for his exclusive use and no other, without any assumption of dominion or custody of the car, the status was that of a lease. Usually the circumstances of each case control in determining what the status is in this respect, rather than an express agreement so designating it. There have been many cases on the subject, and they have been thus classified in 131 A.L.R. 1176 et seq.: (a) "Where attendants collect fees, merely designate place to park, driver retaining control of car, locking it or not as he wishes." (b) "Where attendants collect fees, assume control of cars, sometimes parking them, moving them about where keys are left at request, and tickets are issued as means of identifying cars upon redelivery." (c) Parking lots whose status is controlled by circumstances partly of one sort and partly of another dependent upon the nature of those circumstances.

The status described in (a), supra, has generally been held to create a license (or lease), and that described in (b) has generally been held to create a bailment. There is not much difficulty when the facts are as stated in either (a) or (b), supra. But when not so and there are other circumstances or they differ in some respects from those in (a) or (b), or combine some of each, there is difficulty in making the classification and in fixing the exact nature of the obligation which the lot proprietor owes to the car owner.

This Court has two cases, each of which is clearly within one of those classes. Ex parte Mobile Light & R. Co., 211 Ala. 525, 101 So. 177, 34 A.L.R. 921, relates to a situation clearly in class (a) supra. There were present all its elements which distinguish it from (b). Then we have the case of Kravitz v. Parking Service Co., 29 Ala.App. 523, 199 So. 727, certiorari denied with opinion, 240 Ala. 467, 199 So. 731. The question there, as in the case last noted above, was on the sufficiency of the complaint. In the latter case the complaint alleged that the relation of bailor and bailee existed. In the former the complaint alleged the existence of certain facts which did not show a bailment, but only a license. But as recognized in the Kravitz case, supra, even though there is a bailment there may be by agreement certain limitations of liability which would not otherwise exist. And we may add there may be by agreement limitations which create a bailment when otherwise it would be a license.

We may here mention some of the circumstances materially affecting the question. The fee collected was a monthly rate of $2.50, by an arrangement made by plaintiff's employer for parking the cars of his salesmen, of whom plaintiff was one. The parking lot was unenclosed, and there was an attendant to service it, also managing a filling station on the lot from 8 A. M. to 6 P. M., after which time there was no attendant until the next 8 A. M. The evidence for defendant without conflict was that there were "day to day" parkers to whom tickets were given on parking, and who habitually left their car keys with the attendant. If these cars had not been taken out at 6 P. M., the keys were deposited at an adjoining hotel, not associated with the lot, where they could be taken up on presenting the ticket. Then there were monthly parkers, such as plaintiff. There was another salesman named Teel likewise employed by plaintiff's employer.

"Both Ebersole and Teel testified that they could park on the lot whenever they wanted to and wherever they could find a space, and that they were free to get their cars when they wanted to, without let or hindrance and without securing anyone's permission. Nearly always they parked their cars themselves. If there was a space where the car would not have to be moved, they would lock their car and leave it there. If there was no space where the car could stay without having to be moved, they would leave the keys in the car. Whether to leave the keys or not was not discussed with parking lot employees, Ebersole or Teel made their own decision, based on whether or not the car would have to be moved. Both of them said they had been asked to leave the keys on two or three occasions, but neither Teel nor Ebersole had ever turned the keys to a car over to any of the attendants or left them with him. They were left in the car. Joe Nance, the plaintiff's witness, however,

testified that Ebersole 'Never did leave the key, he always locked his car.' No tickets, receipts, or claim checks were ever given by any attendant on the lot either to Ebersole or to Teel. They usually parked on the part of the lot by the Presbyterian Church but were free to park anywhere they wanted to and sometimes parked at other locations."

Defendant's testimony tended to show that plaintiff never called attention to his car when he parked it; never left his car key, and that the attendant never moved his car after it was parked; that it was always locked. And the same as to Teel's car.

Plaintiff testified that he parked the car there himself twice that day in the morning and locked the ignition, but left the windows open; that he (habitually) took the car out without being challenged. And again on that day, the evidence was that "Ebersole let Teel have the keys to his car to go out on business for Knight Electric Company. Teel testified that he took the car out and returned it about 11:30 A. M. or 12 Noon to the Royal Parking Lot. He parked it himself on the northeast corner of the lot (alley and Empire Hotel) by the wash rack. He parked back of another car, leaving several feet interval. Teel stated that he did not think that the car in front of the Ebersole car could be moved but possibly it could. He left the keys in the car and the windows rolled up. He called no one's attention to the car. Joe ('Sparky') Nance, the colored boy who worked on the lot, was working on the wash rack when the car was left there. As a witness for the plaintiff, Nance testified that he did see the car left there but thought that the car was locked, because the windows were up. James Burns (attendant), according to Teel, was up at the filling station at the time he parked the Ebersole car there in the parking lot. * * * At about six o'clock P. M. on May 17, 1941, James Burns, the man in charge of the lot, and Joe Nance left. This was the regular closing time according to Nance. Joe Nance testified that, when they left, the Ebersole car was parked exactly where Teel had left it. There were eight or nine cars on the lot but he did not examine them to see if they were locked. 'I didn't go to Mr. Ebersole's car, I went so many times and it was locked.' When people who didn't know the lot closed at six o'clock had left their keys in their cars, Joe Nance said that one of the attendants usually left the keys at the Empire Hotel and left a note on the windshield. He stated that Mr. Ebersole always left his car locked.

"Ebersole returned a little after six o'clock and his car was gone. The parking lot was closed. He has never recovered his car although its loss was immediately reported to Samuel Lewis.

"Ebersole admitted that he left his car after six o'clock ten or fifteen times. His keys had never been left in the Empire Hotel. He testified that on occasions when he got his car after six o'clock P. M. 'So far as I (Ebersole) knew, I never paid any attention to whether they (attendants) were there or not, I went in and got my car and went on home."

In that connection, the defendant's attendant testified: "That afternoon he noticed it parked over on the other side of the lot by the Empire Hotel. He had to move the car which was in front of the Ebersole car. When asked, if he moved the Ebersole car, he said, 'No, sir. He (Ebersole) usually locked the car and rolled up the windows and he closed the windows, so I figured it was locked.' He was then asked, 'You figured you couldn't move it?' and answered, 'Yes, I cussed about it.'" But he did not apparently look to see if the key was left in it, but looked at the car, saw the windows up and merely concluded that it was locked.

The question of whether there was a bailment hinges on whether the court could reasonably find from those circumstances that the lot owner assumed the custody and control of this car, under and by virtue of the arrangement and course of dealing, with the right to move it about on the lot pursuant to exigencies which might arise, involving a probable necessity to use the car key.

█ We think the court, trying the case without a jury, could find that when plaintiff's car was parked, if it was so situated with respect to others that they or one of them could not probably be moved without moving plaintiff's car, and that this was apparent to casual observation, it would be the duty of plaintiff on his version of the contract and course of dealing to leave his car key in the car for the purpose of conferring on the attendant the control and custody of the car. If the key was merely left in the car without calling it to the attention of the attendant, then for him to be

chargeable with its custody and control it must have been apparent to the attendant as a reasonable man that such custody was probably necessary to permit others to have proper use of the lot. Osborn v. Cline, 263 N.Y. 434, 189 N.E. 483.

The court (as a jury) could find that under the circumstances plaintiff properly left the key in the car and that those circumstances were of such sort as to charge defendant with notice that it was done; thereby vesting in him the control and possession of the car on that particular occasion, creating the relation of bailee. Since the court rendered judgment for the plaintiff, we will presume that he found the existence of a bailment as alleged in the complaint.

When goods are lost out of the possession of the bailee, negligence is prima facie imputed to him, and he has the burden of producing evidence that the loss was not due to his negligence. Ridgely Operating Co. v. White, 227 Ala. 459(17), 150 So. 693; Prince v. Alabama State Fair, 106 Ala. 340, 17 So. 449, 28 L.R.A. 716.

This principle does not change the burden of proof which remains on plaintiff. Defendant's duty is prima facie discharged in this respect when the loss is shown to have occurred as the result of fire or theft, thereby requiring plaintiff to prove that the fire or theft was the result of the defendant's negligence. Seals v. Edmondson, 71 Ala. 509; Firestone Tire & Rubber Co. v. Pacific Transfer Co., 120 Wash. 665, 208 P. 55, 26 A.L.R. 217; Southern R. Co. v. Prescott, 240 U.S. 632, 36 S.Ct. 469, 60 L.Ed. 836; 6 Am.Jur. 458, section 378. But this burden on plaintiff would be met, if the evidence which proves the theft also proves defendant's negligence.

A neglect of duty by defendant as bailee could be inferred from his leaving the car unlocked with the key in it and unattended on the unenclosed lot after all had left.

But it is insisted that Teel, who parked the car, was himself negligent in leaving it with the key in it, and that his negligence was also a proximate contributing cause. Also that plaintiff had notice of that fact, and of the custom of the proprietor in leaving the lot at six P. M. and himself neglected at that time to take out the key or move the car, and was personally negligent proximately contributing to the loss.

Not now considering the question whether any negligence of Teel was chargeable against plaintiff, as affected by the claim that a bailment may have existed as between them (see Bradley v. Ashworth, 211 Ala. 395, 100 So. 663), the contributory negligence in that respect relates to the act of leaving the key in the car without so notifying the attendant. That could not be considered as negligent in relation to the lot owner if that was done pursuant to an understanding that it should be done under certain circumstances, and if those circumstances existed on that occasion.

We think therefore that there was substantial evidence which supports a finding that defendant should have taken notice of the fact that plaintiff's car was probably left unlocked with the key in it in his custody, and a duty to use due care to protect it from theft on leaving the unenclosed lot unattended, and that no such care was taken. So finding, it was also proper to find an absence of contributory negligence, and to render a judgment for plaintiff such as was done.

Affirmed.

GARDNER, C. J., and BOULDIN and LAWSON, JJ., concur.