William ESMAR, Respondent,

v.

ZURICH INSURANCE COMPANY, and Potomac Insurance Company, Appellants.

No. 55864.

Supreme Court of Missouri,
Division No. 1.

Oct. 9, 1972.

**418**

Milton F. Napier, William R. Kirby, St. Louis, for respondent.

Adolph K. Schwartz, St. Louis, for appellants.

RICHARD C. JENSEN, Special Judge.

This is an action brought in two separate counts by a building owner for loss claimed under two separate insurance policies issued by defendants. A jury returned verdicts for the plaintiff against defendant Zurich Insurance Company in the sum of $11,250.00, and against Potomac Insurance Company in the sum of $5,625.00. The policy issued by Zurich Insurance Company was in the amount of $15,000.00 and the one issued by Potomac Insurance Company was in the amount of $7,500.00.

The contentions raised on this appeal are that the trial court erred in failing to sustain defendants' motion for directed verdicts because the persons alleged to have caused the damage were tenants of the building, and there was no proof that the damage was caused from actual physical contact with the building by a motor vehicle; that the court erred in giving Instructions Numbered 2, 3, 6, 7, 8 and 9 to the jury; excluding evidence of the purchase price of the property and the assessed valuation of the property for tax purposes; excluding an amended petition in a companion case; and that the verdicts were excessive. Since the verdicts were for plaintiff we will review the evidence in the light most favorable to the plaintiff, giving him all the reasonable inferences arising from the evidence, Sharp v. W. & W. Trucking Co., Mo., 421 S.W.2d 213; Gardner v. Simmons, Mo., 370 S.W.2d 359.

The property involved here was a one-story domed building with a ceiling about twenty feet high that faced in a northerly direction. Two large metal beams, or girders, supported the roof running from east to west and were adequate to hold the roof in place. The beam with which we are concerned here rested at one end upon a brick pilaster and at the other end upon a cast iron column six to eight inches in diameter. Plaintiff had originally leased the

premises to Evans Brothers Hauling, a corporation owned by Eugene Evans, Jr. After the expiration of this lease in January, 1964, Evans Brothers Hauling moved outside the City of St. Louis, whereupon Robert Evans contacted plaintiff with regard to himself and his brother Jack Evans parking their trucks in the building on a daily basis at the rate of One Dollar per day per truck. Robert Evans and Jack Evans were subcontractors of Evans Brothers Hauling. No particular place in the building was designated for the parking of the trucks and if the Evanses did not park a truck there they did not owe plaintiff a dollar. The Evanses had a key to the building, as did the plaintiff. On Monday, May 18, 1964, the roof of the building collapsed, at which time plaintiff was called from his home, arriving at the scene about 7:00 A.M. During that day plaintiff talked with Robert Evans who told him that in taking out his truck at 3:00 A.M., "he probably didn't have the hydraulic lift all the way down and he hit that beam." The top of Robert Evans' truck was approximately ten feet from the ground, with a flat top, and had a clearance of about two and one-half feet from the bottom of the beam or girder. He couldn't actually see if he hit anything, but when he started to pull forward the truck felt like it had the emergency brake on, "that something was holding it back from rolling forward." After he moved his truck there were some weird noises going on. He drove his truck outside the building and then went back and moved his brother Jack's truck forward about fifteen feet. He then called Jack and suggested that Jack should have his truck moved out of the garage. Two days prior, on Saturday, May 16, 1964, at about 1:30 P.M., David Edwards, a driver of one of the Evans's trucks, had parked a high-backed-body disposal truck in plaintiff's building. While backing the truck in he struck a post which he identified in an exhibit as the cast iron pole supporting the one end of the roof beam. Plaintiff's exhibit shows this cast iron pole unbroken lying on the floor of the building after the

roof collapsed. After striking the pole Edwards went back to look at it and found his truck up against the pole and it had moved two or three inches. He didn't see any movement of the roof at that time.

Defendants in their defense against plaintiff's claims put into issue the policy exclusion as to loss caused by a tenant and this issue was submitted to the jury. The pertinent provisions in each of the insurance policies which were read to the jury are identical:

("In consideration of the premium for this coverage, and subject to the provisions herein, and to the policy which this endorsement is attached, including endorsements thereon, this policy is extended to insure against direct loss by windstorm, hail, explosion, riot, riot attending strike, civil commotion, aircraft, *vehicles* and smoke, except as herein provided.")

("The term 'vehicles' as used in this endorsement, means vehicles running on land or track but not aircraft. Loss by aircraft or by *vehicles* shall include only direct loss resulting from actual *physical contact* of an aircraft or a *vehicle* with the property covered hereunder, or with the buildings containing the property covered hereunder" * * *

"This company shall not be liable for loss (a) by any vehicle owned or operated by an insured or by any *tenant* of the described premises;")

■ Defendants strenuously urge that Robert and Jack Evans were tenants, or at least tenants in common under the facts of this case, citing Young v. Home Telephone Co., Mo.App., 201 S.W. 635, 637; Johnson v. Simpson Oil Co., Mo.App., 394 S.W.2d 91, 96 (fn 2); Cieslinski v. Clark, Mo. App., 223 S.W.2d 139, 141; Williams v. Treece, 184 Mo.App. 135, 168 S.W. 209, 211; Lewis v. Ebersole, 244 Ala. 200, 12 So.2d 543; Zweeres v. Thibault, 112 Vt. 264, 23 A.2d 529, 532; Webster's New Twentieth Century Dictionary, unabridged

(2d Ed.); Black's Law Dictionary (4th Ed.), 1935.

Some of these cases cited by defendants on this issue are not analogous to the facts here in that they do not consider the parking of motor vehicles, which is an important factor in this case.

*Young,* supra, is an action for trespass involving the placing of electrical poles upon another's land without consent of the landowner; *Johnson,* supra, involves the relationship between gasoline station operator and oil company in a Workmen's Compensation action; *Cieslinski,* supra, is an unlawful detainer action between landlord and tenant resulting from the rental of an apartment; *Williams,* supra, is an unlawful detainer action seeking a determination as to whether the using of land free took the occupancy out of a landlord-tenant relationship.

We recognize that each case must rest upon its own facts and, in a doubtful case such as this, consideration should be given to the manifested intention of the parties.

A close look at the testimony develops these facts in addition to those already set out. The expired lease was held by a corporate entity and the arrangements Robert and Jack Evans made were separate and apart from the original lease arrangement as well as not being a continuation of the original agreement.

Robert and Jack Evans operated their trucks independently of each other and held separate subcontracts with Evans Brothers Hauling, the corporation. There was apparently no intention on the part of Robert or Jack Evans to rent the building. Their sole purpose was to park their trucks in the building overnight because, "they were parking in the street and people did some damage and they asked me if they could park at night in there." All witnesses on this subject agree that the two Evanses and plaintiff could terminate the parking agreement at any time if either of them chose to do so. The plaintiff was looking for a tenant at the time he agreed to permit the Evans brothers to park their trucks in there and, "They said as soon as I could locate a tenant they would quit parking there." No specific place in the building was assigned to them for parking and they were not responsible for repairs to the building. While they did not pay plaintiff daily, their reasons given were that they did not see him often enough to do that and, furthermore, the plaintiff permitted the Evans brothers to tell plaintiff how much they owed him at the end of each month.

The facts in this case, coupled with the apparent intentions of the involved persons, bring this case within the category of a relationship between a vehicle owner and a parking location or site as distinguished from an agreement for the rental of a building.

Equity Mutual Insurance Co. v. Affiliated Parking, Inc., Mo.App., 448 S.W.2d 909, is a case in which the legal status of an automobile owner was involved. This considered a subrogation claim to recover for the loss of an automobile stolen from a parking lot.

"The usual terms employed are those of lessor-lessee or licensor-licensee. As an example of the difficulty courts have in distinguishing between the two relationships, compare Frum v. Yonkers Raceway, Inc., N. Y., 204 N.Y.S.2d 422, and Travelers Insurance Co. v. Pond, Ohio Com.Pl., 143 N.E.2d 189. In these two cases, on what seems essentially similar factual situations, one court found the relationship to be that of lessor-lessee while the other found it to be licensor-licensee. This matter has been settled in Missouri where it has been held the distinctive feature of a lease of real or personal property is that it conveys an interest in the property for a fixed or definite period of time. Sharp v. W. & W. Trucking Company, Mo., en banc, 421 S.W.2d 213 [2], and cases there cited. Under the facts in the instant ap-

peal there was no direction to Marsh to park on any certain place, the choice of the parking location being left to Mrs. Marsh's discretion. It seems clear there was no attempt or intention to convey any interest in the property. Accordingly, the relationship is properly one of licensor-licensee rather than lessor-lessee." 448 S.W.2d l. c. 915.

Both plaintiff and defendants argue from the case of Lewis v. Ebersole, supra, which involved an automobile parking lot:

"If there was only permission given, though for a reward, to park at any convenient place on the lot, without any assumption of dominion over the property or custody of it in any respect, it was a license. If a designated place on the lot was assigned to the car owner for his exclusive use and no other, without any assumption of dominion or custody of the car, the status was that of a lease. Usually the circumstances of each case control in determining what the status is in this respect, rather than an express agreement so designating it." 12 So.2d l. c. 544.

The findings in *Equity*, supra, and *Lewis*, supra, differentiating between a designated place and a non-designated place to park is a controlling factor here and is decisive under all of the facts of this case.

We hold that the permission given to either of the Evanses to park at any convenient place would be a license and not a lease, and the court properly overruled defendants' motion for directed verdict on that issue.

Defendants next urge that plaintiff's case rests on surmise and speculation, that there was no proof that the roof collapsed as a result of actual physical contact with a motor vehicle, and the court erred in not directing a verdict in favor of the defendants, citing Thompson v. Southwestern Bell Telephone Co., Mo., 451 S.W.2d 147; Kimmie v. Terminal R. R. Ass'n of St. Louis, 334 Mo. 596, 66 S.W.2d 561, 565;

Stephens v. Thompson, Mo., 293 S.W.2d 392; Osterhaus v. Gladstone Hotel Corp., Mo., 344 S.W.2d 91; Bertram v. Wunning, Mo.App., 385 S.W.2d 803. There was no expert testimony offered by either party as to the probable cause of the collapse.

■ In none of the cases cited do we have a factual situation similar to the one here. However, in each case, and in others also cited by plaintiff, the law is clearly stated and well established that a verdict will not stand if based on surmise, guesswork, or speculation; also M.A.I. 2.01.

■ It is also a correct statement of the law that a verdict will stand upon facts even though circumstantial in part from which a jury could, by reason or inferring, reach its conclusion. Tucker v. Central Hardware Company, Mo., 463 S.W.2d 537, l. c. 540:

"Probative facts may be established by circumstantial evidence, and while circumstantial evidence need not have the quality of absolute certainty, Ferrell v. Sikeston Coca-Cola Bottling Co., Mo. App., 320 S.W.2d 292, the circumstances must point to the desired conclusion with such a degree of certainty as to make that conclusion reasonable and probable and must rise above the stature of guesswork, speculation or surmise. Gray v. Williams, Mo.App., 289 S.W.2d 463."

■ The roof of this building, even though old, was supported by adequate beams or girders. No defects in the supports of the roof were disclosed prior to the time of the striking and moving of the iron pole two or three inches at its base. The striking of the pole by one of the high-backed disposal trucks occurred at approximately 1:30 P.M. on a Saturday. There was no testimony of any activity on Sunday. On the following Monday at 3:00 A.M., when Robert Evans attempted to move his ten-foot-high truck, he felt something holding back his truck accompanied by weird noises. Sometime during the next four hours the roof collapsed. The

beam remained in place where it rested on the brick pilaster, but the other end, which had been supported by the iron pole, was on the floor of the building with the pole still attached at the top and broken off at the floor. Exhibits in evidence show the bottom of the pole had also been moved forward toward the front of the building. The record is completely void as to any condition or circumstance other than these facts which might have caused the roof to collapse.

Plaintiff's evidence as outlined permits the legitimate inference by the jury that the collapse of the roof was the direct result of the physical contact of the motor vehicles of the Evanses without indulging in guesswork or speculation, Van Brock v. First National Bank in St. Louis, 349 Mo. 425, 161 S.W.2d 258:

> "There is and can be no objection to the fact that some material, essential element of a plaintiff's case, or a defense, is not proved by definite, affirmative testimony but is found by the jury's verdict presumably by reasoning or inferring from a fact, or testimony as to a specific subject, or even from circumstantial evidence, that a certain required thing or fact existed or was true." 161 S.W.2d l. c. 260.

Reviewing the evidence in the light most favorable to plaintiff, and giving him the benefit of all reasonable inferences, we find the jury was warranted in finding the issues for the plaintiff and the trial court correctly overruled defendants' motion on this issue.

■ Defendants next urge prejudicial error in the giving of Instructions Numbered 2 and 3. These instructions are identical except for the name of the insurance company.

> "Your verdict must be for plaintiff under Count I and against defendant Zurich Insurance Company, if you believe: .
>
> First, defendant issued a policy of insurance covering the building at 3112–16–18 Cass Avenue to the plaintiff, and
>
> Second, the plaintiff sustained a loss within the terms of the policy, and
>
> Third, the plaintiff was damaged as a direct result of said loss
>
> unless you believe that plaintiff is not entitled to recover by reason of Instruction No. 4."

The instructions are not in M.A.I., and plaintiff in defending them indicates that an attempt was made to modify or pattern them after M.A.I. 31.08. In using this instruction as a guide, there was an apparent failure to recognize that 31.08, which is titled "Verdict Directing-Life Insurance Policy" submits only facts for determination, whereas here the submission, "Plaintiff sustained a loss within the terms of the policy," does not call for a factual determination by the jury. In the giving of these instructions nothing was submitted for the jury to find as a fact; but, rather, asked the jury to arrive at a legal conclusion.

The matter submitted by Paragraph "Second" is one that is strictly for the determination of the court. Veterans Linoleum & Rug, Inc. v. Tureen, Mo.App., 432 S.W.2d 372, and Price v. Seidler, Mo., 408 S.W.2d 815.

Defendant's position that these instructions gave the jury a roving commission is meritorious. In Paragraph "Second" of each instruction the jury was given a roving commission to find for plaintiff any loss under the policies, and the instructions failed to require the jury to find that the loss resulted directly from actual physical contact of a vehicle with plaintiff's building. There is no denial here that the roof did collapse, but that fact alone would not entitle the plaintiff to recover under the policies. The ultimate facts for the determination of the jury in this case are that the roof collapsed as the direct result of the actual physical contact with one or both of the trucks owned by the brothers,

Robert and Jack Evans. The change brought about by M.A.I. as compared with prior instruction practices stresses that, among other things, only the ultimate facts in each case are to be submitted to the jury for its determination, M.A.I. XXIII. We hold that the giving of Instructions Numbered 2 and 3 was prejudicial error.

■ Defendants claim error in the trial court's exclusion of evidence pertaining to the purchase price cost of the building and its assessed valuation for tax purposes. We find no merit in these contentions. The property involved was purchased by plaintiff over twenty years before he sustained this damage and many improvements had been made by him after he acquired it. We have two different economic situations here, e. g., the economy at the time the building was purchased and the economy at the time the roof collapsed twenty years later. Therefore, any evidence as to the cost at the time of the acquisition of the property would be too remote and would not have been proper for the jury to consider. Shelby County R–IV School District v. Herman, Mo., 392 S.W.2d 609, holds:

"Neither the evidence that the land was bought for $4,050 nor the evidence contained in the offer of proof was admissible. The purchase price 23 years before the valuation date, in an entirely different economic era, would be so remote in point of time as to afford no fair criterion of value at the date of valuation." 392 S.W.2d 1. c. 614.

The admissibility of evidence relating to the purchase price of the property was a matter within the discretion of the trial court. We find no abuse of discretion in the action of the court.

■ On cross-examination an unsuccessful attempt was made to inquire of plaintiff as to the assessed valuation of the property for tax purposes. Plaintiff's objection to defendants' offer of proof was sustained. No cases are cited by defendants in urging error on this point and our research developed none that would support defendants' contention, but we find the contrary position has been upheld by our appellate courts. The general view on this point as adopted in Missouri is found in 39 A.L.R.2d 214:

"It is the overwhelming weight of authority that assessed value is not competent direct evidence of value for purposes other than taxation. Thus, it has been held or stated in a large number of cases that evidence of assessed value, or other valuation for tax purposes, at least of itself, as determined without the participation of the owner of the property, is not evidence of the value of the property for other purposes."

Union Electric Co. v. Mount, Mo.App., 386 S.W.2d 126, Kansas City & G. Ry. Co. v. Haake, 331 Mo. 429, 53 S.W.2d 891, and cited cases.

Since this case must be remanded for retrial, it is not necessary to pass on all of the complaints of error separately raised by defendants, which would only lengthen this opinion. Unless defendants can present or develop some additional evidence to support their affirmative defense that the Evans brothers were tenants of plaintiff, then, that issue should not be submitted to the jury for its determination.

By eliminating the issue of tenancy, Instructions Numbered 4, 5, 6 and 7 should not be given to the jury in a retrial of this case.

■ Defendants claim error in the giving of Instructions Nos. 8 and 9, which are M.A.I. 4.02 instructions, with the address of the damaged property included. On this point defendants argue that there was no evidence on the before-and-after value of the property, and cite Curtis v. Fruin-Colnon Contracting Co., 363 Mo. 676, 253 S.W.2d 158. However, the evidence in the case does not support the defendants' position. The defendants offered

no evidence on the issue of the loss by damage to the building. Plaintiff testified that before the roof collapsed the building was worth approximately $32,000.00 and after the roof collapsed it was worth nothing. He further testified that the land on which the building was located had a value of $7,500.00 which would leave his loss at $24,500.00 and is an amount greater than the combined limits of the two policies of insurance. The owner of property is qualified to give his opinion as to the value of his own property, even though he was not a real estate expert, State ex rel. State Highway Comm. v. Northeast Building Co., Mo., 421 S.W.2d 297. We find no error in the giving of Instructions Nos. 8 and 9 and hold that the plaintiff's evaluation of his loss was proper.

Defendants claim error in the court's exclusion of an amended petition in a companion case, citing no authorities. The companion case was an action by this plaintiff against all of the Evanses in tort for damages to the same building. Plaintiff's petition in the tort action asks for damages in the sum of $25,000.00, and in his testimony in the case before us he has testified his damages were in the amount of $24,500.00. Defendants' position that the purpose of offering the petition in the companion case was because it would affect the plaintiff's credibility is unrealistic and without merit. There was no error in the trial court's action on this issue.

The remand of this case makes it unnecessary for us to rule on defendants' claim that the verdicts were excessive.

Because of the error in the giving of Verdict Directing Instructions No. 2 and No. 3, the judgments are reversed and the cause remanded for a new trial.

BARDGETT, Acting P. J., and SEILER, J., concur.

HOLMAN, P. J., not sitting.