298 So.2d 266

**MOBILE PARKING STATIONS, INC.,**
**a corporation**

v.

**R. C. LAWSON, Individually and**
**d/b/a Lawson Motors.**

**Civ. 325.**

Court of Civil Appeals of Alabama.

July 24, 1974.

Stockman, Bedsole & Kimbrough, Mobile, for appellant.

Melvin W. Brunson, Mobile, for appellee.

BRADLEY, Judge.

Plaintiff-appellee filed an action in the Circuit Court of Mobile County against de-

fendant-appellant claiming in a two count complaint that appellant had converted a 1968 two-door Ford Falcon to its use and that appellant had negligently suffered the loss of said Ford automobile which had been entrusted to its care. Damages for the loss of the vehicle were claimed to be $1,000. After answer, trial was held before the court sitting without a jury. Judgment was rendered for appellee in the amount of $800, and this appeal is from that judgment.

Appellant argues primarily that (1) there is no proof of conversion, and (2) there is no proof of a bailment.

The evidence shows that appellee brought a 1968 Ford Falcon automobile to Mobile, Alabama on Thursday afternoon late, February 8, 1973, and left it at a parking lot on S. Conception Street just east of the Greyhound bus station. It was sleeting and snowing that afternoon and the attendant on duty was in a small building on the lot. Appellee stated that he went to the building and talked to the attendant. Appellee said he told the attendant he wanted to leave the Falcon there because his boy was coming in on a Greyhound bus the next day or the day after and would pick up the car. He then asked if the lot was a "24 hour lot" and was assured that it was.

Appellee said that he was told that the rate was $.60 per day and he gave the attendant a five or ten dollar bill, with the attendant taking out a dollar and some change. The appellee then told the attendant that he was leaving ten dollars in the trunk of the car so that his boy would have money to pay any additional storage charges when he picked up the car. According to the appellee, the attendant then directed him to take the keys to the Greyhound bus station and leave them there because the attendant did not want to be responsible for the money left in the car and he might not be on duty when appellee's son called for the car.

Appellee testified that the attendant took the keys to the car, parked the car on the lot, locked it up, placed a portion of the parking ticket under the windshield wiper, and then handed appellee the keys and the remainder of the ticket.

Appellee then went to the bus station and asked to leave the keys for his son. The ticket agent took an envelope, placed the keys and ticket stub in it and stapled it together. Appellee wrote his son's name and instructions for finding the car on the outside of the envelope and gave the envelope to the ticket agent.

Due to the heavy snowfall on the next day, appellee's son did not get to Mobile that weekend but did arrive there on a Greyhound bus the following weekend. The son picked up the keys and attempted to locate the car. Being unable to find the car, the son called appellee and informed him of the situation. Appellee went to Mobile the next day and contacted the manager of the parking lot, Mr. Breed. The manager confirmed that the car was missing and advised appellee to file a report with the police and to contact the parking lot corporation's insurance adjuster. Both were done.

The manager of the parking lot testified that the attendant informed him that the car was parked on the lot on the day testified to by appellee, but the manager also stated that the lot was not a "24 hour lot" but was open only from eight a. m. to six p. m. daily. Mr. Breed said that he did not ask the attendant whether he or the appellee suggested the keys be left at the bus station. The attendant did not testify.

For there to be a conversion of property, it must appear from the evidence that there has been a wrongful taking or wrongful detention, or an illegal assumption of ownership, or an illegal user or misuser. Jones v. Americar, Inc., 283 Ala. 638, 219 So.2d 893. In the instant case there is no evidence of a conversion of appellee's auto by appellant as defined above;

hence appellant is correct as to its first contention.

The Supreme Court in Lewis v. Ebersole, 244 Ala. 200, 12 So.2d 543, said that:

"In order to constitute a bailment the bailee must have voluntarily assumed the custody and possession of the property for another. Ridgely Operating Co. v. White, 227 Ala. 459, 150 So. 693. If this is not done, the relation here material was either that of a license or a lease. If there was only permission given, though for a reward, to park at any convenient place on the lot, without any assumption of dominion over the property or custody of it in any respect, it was a license. If a designated place on the lot was assigned to the car owner for his exclusive use and no other, without any assumption of dominion or custody of the car, the status was that of a lease. Usually the circumstances of each case control in determining what the status is in this respect, rather than an express agreement so designating it. There have been many cases on the subject, and they have been thus classified in 131 A.L.R. 1176 et seq.: (a) 'Where attendants collect fees, merely designate place to park, driver retaining control of car, locking it or not as he wishes.' (b) 'Where attendants collect fees, assume control of cars, sometimes parking them, moving them about where keys are left at request, and tickets are issued as means of identifying cars upon redelivery.' (c) Parking lots whose status is controlled by circumstances partly of one sort and partly of another dependent upon the nature of those circumstances.

"The status described in (a), supra, has generally been held to create a license (or lease), and that described in (b) has generally been held to create a bailment. There is not much difficulty when the facts are as stated in either (a) or (b), supra. But when not so and there are other circumstances or they differ in some respects from those in (a) or (b), or combine some of each, there is difficulty in making the classification and in fixing the exact nature of the obligation which the lot proprietor owes to the car owner.

"This Court has two cases, each of which is clearly within one of those classes. Ex parte Mobile Light & R. Co., 211 Ala. 525, 101 So. 177, 34 A.L.R. 921, relates to a situation clearly in class (a) supra. There were present all its elements which distinguish it from (b). Then we have the case of Kravitz v. Parking Service Co., 29 Ala.App. 523, 199 So. 727, certiorari denied with opinion, 240 Ala. 467, 199 So. 731. The question there, as in the case last noted above, was on the sufficiency of the complaint. In the latter case the complaint alleged that the relation of bailor and bailee existed. In the former the complaint alleged the existence of certain facts which did not show a bailment, but only a license. But as recognized in the Kravitz case, supra, even though there is a bailment there may be by agreement certain limitations of liability which would not otherwise exist. And we may add there may be by agreement limitations which create a bailment when otherwise it would be a license."

The facts relating to the question of custody and possession of the Ford Falcon by appellant show undisputedly that on the day that appellee left the car at appellant's parking lot, the attendant parked the car on the lot, locked it, placed a portion of the parking ticket under the windshield wiper and handed the keys to appellee. It is also undisputed that the attendant told appellee that the lot was a "24 hour lot," and that the attendant told appellee to leave the keys at the Greyhound bus station because he did not want to be responsible for the car with the money in it.

The evidence did show that there was a sign on the little building on the parking lot proclaiming that the hours were eight a. m. to six p. m. Appellee testified that he did not see this sign or did not read it.

As we view this evidence, it is sufficient for the trier of fact to have concluded therefrom that the appellant's agent had assumed custody of this vehicle when he took the keys, parked the car where he chose, and locked it. The question is, did the attendant then give up possession of the vehicle when he returned the keys to the appellee? We think he did.

It appears without question that appellee paid for more than one day of storage, for the appellee stated that the attendant kept one dollar and some change. The daily charge was $.60. Also, when the ten dollars was left in the car for the purpose of paying additional storage charges if there were any, there could be inferred an intention to leave the car for more than one day. However this may be, it is also without dispute that the attendant gave up the keys to the car after it was parked and locked by handing them to appellee and suggesting that they be left at the Greyhound bus station. It also appears from the evidence that the keys were placed in a sealed envelope with a notation thereon that it was to be delivered to appellee's son upon his arrival at the station. This would suggest that only the son had access to the keys and therefore the car. In other words, the attendant no longer had control over or possession of the vehicle. He could not obtain the keys for any purpose. Hence the car could only be moved by the son. The appellant no longer had control of the vehicle. It could not gain access to the car to move it about the lot or for any other legitimate purpose. Consequently, we conclude that, while appellant had control and custody of the vehicle initially, it gave up possession of and control over it when the attendant told plaintiff to take the keys to the Greyhound station and leave them there. From that point on, appellant did not have possession of the vehicle. The relationship at that point between appellant and appellee was one of lessor-lessee. In other words, all appellant had done was lease space to appellee for the storage of his car. Appellee through his son could obtain the keys at the Greyhound station and remove the vehicle from appellant's premises at his pleasure. The means to do so was in appellee's control, not appellant's.

Appellant being without custody or control over the vehicle in question, there was no bailment; and, there being no bailment, appellant was not liable for the loss of the vehicle.

For the errors above noted, the trial court's judgment is reversed and one rendered here in favor of appellant.

Reversed and rendered.

WRIGHT, P. J., and HOLMES, J., concur.