Aerowake Aviation, Inc. (Aerowake) appeals from a judgment against it in favor of Clifford M. Winter (Winter) and his subrogated insurance carrier, Avemco Insurance Company (Avemco). Winter sued Aerowake for damage to his airplane while it was parked at Aerowake's airport facility. Winter sued on a theory of bailment, alleging that Aerowake breached its duty to exercise ordinary and reasonable care for the protection, preservation, and return of his airplane. The trial court entered judgment on a jury verdict of $7,840 for Avemco and $8,660 for Winter, and denied Aerowake's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.
Aerowake argues that the court erred in denying its motion for new trial because the verdict is contrary to the great weight of the evidence in that no bailment relationship existed between the parties. We disagree, and affirm.
Winter, a retired lieutenant colonel in the United States Air Force, constructed an experimental two-man aircraft over the course of several years in the late 1970's. In the summer of 1979 he went to the North Huntsville Airport, operated by Aerowake, and talked with Jim Wakefield, the president and a chief stockholder of Aerowake, about arrangements for keeping his plane at the airport. Aerowake provided services including fuel, employee attendance from 8:00 a.m. to 8:00 p.m., flight school, food and beverages, car rental, airplane maintenance, tie-downs, and hangars. In August 1979 Winter contracted with Aerowake to store his airplane at the airport.
He initially used a tie-down spot in an open grassy area, but he later took a space in a covered plane port. The space had three tie-down rings and Aerowake provided ropes for Winter to tie his plane down. The plane port had walls on both ends but was open to the front and rear of the airplanes. Winter testified that he was particularly glad to have this space because it was right next to the trailer in which Leroy Trulson (Trulson), Aerowake's mechanic, lived with his family.
Aerowake provided the trailer for Trulson to live in free of charge. Although Wakefield testified that living on the premises was not a condition of Trulson's employment, he did admit that Trulson's presence at the airport at night was a benefit to the airport and the owners of airplanes parked there.
On September 5, 1980, Ron Sunholm (Sunholm) drove his dune buggy into Winter's airplane and caused substantial damage to it. Sunholm was related by marriage to Trulson's son, and the two of them rode the dune buggy in the fields around the airport. Sunholm stuck his dune buggy in a pond several days before the accident. He borrowed a rope from Trulson in order to pull it out. Apparently after freeing the dune buggy, he cranked it up and ran into Winter's airplane. Sunholm testified that the throttle stuck and the brakes would not work because they had mud in them.
Trulson had seen Sunholm driving his dune buggy on the airport premises numerous times prior to the day it got stuck in the mud. Sunholm asked Trulson for help in freeing the dune buggy, but he refused and only consented to let Sunholm borrow a rope; nor did he supervise Sunholm's efforts, being busy with work on an airplane.
The dispute at trial and on appeal concerns the nature of the parties' arrangements for storage of Winter's airplane — whether it was a bailment or merely a lease or license. If it was a bailment, Aerowake owed a duty as bailee to exercise ordinary and reasonable care for the protection of *Page 167 
the airplane. If it was a lease or license, there would be no such duty on Aerowake.
The Court of Civil Appeals recently adopted the definition of bailment found at 8 Am.Jur.2d Bailments § 2 (1980):
 "`[T]he delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it. [Footnotes omitted.]'"
Farmer v. Machine Craft, Inc., 406 So.2d 981, 982 (Ala.Civ.App. 1981).
The parties argue principally from the Alabama cases regarding automobile parking lots: Lewis v. Ebersole, 244 Ala. 200, 12 So.2d 543 (1943); Ex parte Mobile Light R. Co.,211 Ala. 525, 101 So. 177 (1924); Mobile Parking Stations, Inc. v.Lawson, 298 So.2d 266 (Ala.Civ.App. 1974); Kravitz v. ParkingService Co., 29 Ala. App. 523, 199 So. 727 (1940). Aerowake would have us hold that the facts here are more like those inEx parte Mobile Light R. Co., supra, and Mobile ParkingStations, supra, in that the alleged bailee did not have sufficient control over the property for the relationship to constitute a bailment.
We do not find this argument compelling. The circumstances of an airplane parking facility are not exactly analogous to those of an automobile parking lot. Some protection of the airplane from the weather is always provided — if not shelter, at least tie-down equipment to keep the airplane secure in the wind. Airplanes can usually be moved without the ignition keys. In fact, Winter's airplane did not require keys to start, so the primary indication of possession in automobile cases is lacking.
Aerowake states that it did not have Winter's permission to move or start his airplane. This is not determinative here for several reasons. Should an emergency arise such as a fire in the plane port, Aerowake would surely have a duty to extinguish the fire or move airplanes out of danger. Trulson testified that when a storm approached he inspected the tie-downs and made sure no loose objects such as garbage cans were around to be blown into the planes. Thus, the requisite amounts of possession and control and assumption of a duty to use reasonable care to protect the property were present.
In most cases of this type the defendant fixed-base operator, such as Aerowake, admits the existence of a bailment and argues that it met its duty of ordinary care. Aircraft Sales Service, Inc. v. Bramlett, 254 Ala. 588, 49 So.2d 144 (1950);Naxera v. Wathan, 159 N.W.2d 513 (Iowa 1968); Alamo Airways,Inc. v. Benum, 78 Nev. 384, 374 P.2d 684 (1962). Where a fixed-based operator or an airport has challenged the existence of a bailment, most courts have found a bailment to exist. Cityof Jackson v. Brummett, 224 Miss. 501, 80 So.2d 827 (1955);Hendren v. Ken-Mar Airpark, Inc., 191 Kan. 550, 382 P.2d 288
(1963); Meyer v. Moore, 329 P.2d 676 (Okla. 1958); Clack-NomahFlying Club v. Sterling Aircraft, Inc., 17 Utah 2d 245,408 P.2d 904 (1965). In Meyer v. Moore, supra, the facts were held to establish "a bailment for hire under which it was the duty of the defendants to use ordinary care in safeguarding the plaintiffs' airplane during the time it was stored at the airport," even though "the owner or pilot of the plane was responsible for tying down his own airplane." Id., 329 P.2d at 679.
In Central Aviation Company v. Perkinson, 269 Ala. 197,112 So.2d 326 (1959), the Court found an agreement on the part of the company to tie down the airplane, and that the company breached this agreement by not providing ropes of sufficient strength. The case was not tried on an issue of bailment, but does go to show that airplane parking facilities provide more than a mere parking space.
Aerowake does not raise on appeal the question of whether it breached any duty it might have had nor whether the damage caused by Sunholm was foreseeable. The general supervision of the premises by Trulson, however, coupled with his admission that he had seen Sunholm driving his dune buggy on the property, indicate to this *Page 168 
Court that the verdict and judgment are not manifestly unjust.
For the reasons stated above, the judgment of the trial court and its denial of Aerowake's motion for new trial are affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.